879 So.2d 112 (2004)
Jody C. DEAN
v.
SOUTHMARK CONSTRUCTION and Louisiana Workers' Compensation Corporation.
No. 2003-C-1051.
Supreme Court of Louisiana.
July 6, 2004.
*113 Law Office of Paul R. Matzen, Paul R. Matzen, Baton Rouge, Counsel for Applicant.
Juge, Napolitano, Guilbeau, Ruli & Frieman, Robert J. May, Johnson, Stiltner & *114 Rahman, Jefferey J. Warrens, Baton Rouge, Maria Antoinette Finley, Counsel for Respondent.
JOHNSON, J.
We granted certiorari of plaintiff's writ application to determine whether the Court of Appeal erred in its determination that the instant parties did not have a statutory employer-employee relationship, and reversed the Office of Workers' Compensation's judgment in favor of benefits for the plaintiff. For the following reasons, we conclude that SouthMark Construction waived its defense that it was not Dean's statutory employer. Further, the court misapplied the manifest error-clearly wrong standard of review appropriate in workers compensation cases. Brown v. Coastal Construction & Engineering, Inc., 96-2705 (La.App. 1st Cir.11/7/97), 704 So.2d 8, 10 (citing Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706, 710). Accordingly, we reverse the Court of Appeal's decision, and we reinstate the ruling of the Office of Workers' Compensation.

FACTS AND PROCEDURAL HISTORY
In October of 1999, Bobby G. Markle ("Markle"), a subcontractor, hired Jody C. Dean ("Dean") to work for him as a carpenter forming up the foundation for several houses being built by SouthMark, the general contractor, in the Kensington Estates subdivision. Dean did not have a vehicle, therefore Markle agreed to provide him with transportation and to pay him from 7:00 a.m. to 3:30 p.m., even in situations where Markle was late picking Dean up.
On the morning of November 19, 1999, Markle was driving Dean to the SouthMark construction site where the two planned to finish building the form for the slab foundation. Upon entering the subdivision where the job site was located, Markle passed the intended site and proceeded to another site one-eighth of a mile away where Markle's uncle, Marvin Graham, was building another house. This was not a SouthMark job site. Dean testified that Markle did not explain to him why they were stopping at Graham's site, but he knew that Graham had a tool trailer, and he believed that they were going to the site to borrow from Graham a maul, a tool similar to a sledgehammer, which they needed to complete the work on the SouthMark foundation.
Upon their arrival, Markle exited the truck, and Dean did also. Dean was standing near the fire warming himself at the construction site, when one of the laborers working on the house under construction either dropped or threw a hammer down from the roof. Dean was struck on the head; the blow knocked him unconscious and fractured his skull.
After the accident, Dean filed a claim with the Office of Workers' Compensation (the "OWC") against SouthMark and its workers' compensation insurer, Louisiana Workers' Compensation Corporation ("LWCC"), alleging he was entitled to benefits because he was in the course and scope of his employment as a statutory employee of SouthMark when he was injured. SouthMark disputed the claim, citing the September 21, 1999, Subcontractor Base Agreement it entered into with Markle as precluding Dean from recovering workers' compensation benefits.
The Subcontractor Base Agreement provided:
"Subcontractor shall furnish all labor, materials, permit(s), tools, equipment, and any other items necessary for the completion of work on Subcontractor bid form, plans and specifications, and purchase orders, which will be issued by the *115 Contractor from time to time in accordance with the terms and conditions of this agreement."
The Agreement also included an indemnification clause which protected SouthMark
"against all loss, harm, damages, causes of action, claims or liabilities rising out of or related to work performed or to be performed by Subcontractor, its employees agents, representatives, subcontractors, including but not limited to injuries to persons and to property or either of them and including all court costs and attorney's fees incurred by Contractor."
In addition, the Agreement designated Markle as
"solely responsible for payment of all income, withholding, social security, unemployment and other taxes imposed by the state or federal law in connection with wages it pays or persons it employs. Subcontractor shall also obtain and pay for all required licences and permits, shall comply with all requirements of city, county, state and federal ordinances, laws and regulations, including occupational, safety and health acts."
Relying on the Subcontractor Base Agreement, SouthMark asserted that La. R.S. 23:1061 mandates that a statutory employment relationship is not created in the absence of a written agreement recognizing the principal as a statutory employer.
In his case in chief Dean introduced the deposition testimony of SouthMark's vice-president and accountant, Renee Wallace, to prove he was covered by SouthMark's workers' compensation carrier, the LWCC. Wallace testified that SouthMark was aware that Markle did not have workers' compensation insurance. During her deposition, Ms. Wallace testified that the LWCC assessed twenty-nine dollars ($29) for every one hundred dollars ($100) SouthMark paid to an uninsured framing subcontractor. In response, Ms. Wallace deducted the $29 insurance premiums from each $100 owed to Markle. Jody Dean testified that Markle withheld one hundred ($100) from each employees' weekly paychecks, alleging "that he had workers' comp through SouthMark." SouthMark argued that it did not have a workers' compensation policy for Markle, as its policy only covered SouthMark's liability.
The workers' compensation hearing officer disagreed with SouthMark's contentions and awarded Dean workers' compensation benefits. In her oral reasons for judgment, the hearing officer concluded that although Dean was not injured at the SouthMark job site; SouthMark owed compensation because Dean was on an errand in furtherance of SouthMark's trade or business.
The court of appeal reversed the hearing officer's compensation award, finding that Dean was not "performing work which is part of the principal's trade, business, or occupation" because he was not at the SouthMark job site at the time the accident occurred.[1] Further, the court of appeal found that SouthMark was not a party to the transportation agreement between Markle and Dean. Finally, the appellate court found that borrowing a tool from another job site was not an integral part of SouthMark's business, especially considering that Markle was required by the Subcontractor Base Agreement to furnish all necessary tools and equipment. Dean applied for rehearing in the First Circuit Court of Appeal, which denied his application.[2] Subsequently, Dean timely *116 sought a writ of certiorari from this Court to review the First Circuit's reversal of his workers' compensation award, which this Court granted.[3]

DISCUSSION

I.
As a preliminary matter, despite SouthMark's arguments in brief and during oral arguments, the only issue properly before this Court is whether Dean was executing work which was "a part of the trade, business, or occupation" of SouthMark when the accident occurred. SouthMark has presented arguments before this Court that there was no statutory employment relationship between itself and Dean, as defined by La. R.S. 23:1061(A)(2) and (3). This Court cannot adjudicate the merits of SouthMark's assertions because SouthMark failed to raise the issue of Dean's statutory employee status on appeal.
In its appeal to the First Circuit, SouthMark assigned only one error: "The trial court was manifestly erroneous in finding that Jody C. Dean was injured by an accident in the course and scope of his employment as a statutory employee of SouthMark Construction on November 19, 1999." Although by mentioning "statutory employee" this assignment is broad enough to have allowed briefing of the two-contract theory of statutory employment, SouthMark did not brief this issue. SouthMark's entire argument was based on the portion of LSA-R.S. 23:1061 that states "[w]ork shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." LSA-R.S. 23:1061(A)(1). The "Argument" section of SouthMark's brief to the first circuit consists of citing one case, May v. Sisters of Charity of the Incarnate Word, 26,490 (La.App. 2 Cir. 3/1/95), 651 So.2d 375, writ denied, 95-0804 (La.5/5/95), 654 So.2d 329, for the proposition that an employee traveling to work is not in the course and scope of employment and SouthMark's own analysis of distinctions between being in the course and scope of employment with the direct employer and doing work essential to generate the principal's goods. SouthMark cites no authority for the conclusions it draws concerning these distinctions.
The Court of Appeal apparently thought SouthMark's argument was convincing, for the lower court's opinion mirrors SouthMark's argument concerning course and scope. Thus, SouthMark was successful in getting the OWC hearing officer's ruling reversed on the issue of course and scope. Neither the OWC hearing officer nor the appellate court mentions the two-contract theory.
Apparently, it was only after this Court granted Dean's writ application that SouthMark revived its original argument: that the evidence did not support the two-contract theory and SouthMark was therefore not a statutory employer. This belated argument, apparently prompted by SouthMark's concern that the Court of Appeal's opinion was in jeopardy, cannot be considered. We cannot consider contentions raised for the first time in this Court which were not pleaded or raised in the court below and which the lower courts have not addressed. Boudreaux v. State, Dept. of Transp. and Dev., 01-1329, p. 2 (La.2/26/02), 815 So.2d 7, 9. As SouthMark failed to urge the two-contract issue in its assignments of error to the Court of Appeal, this Court cannot address the issue now, as it has been waived. See Reaux v. *117 City of New Orleans, 01-1585 (La.App. 4 Cir., 2002), 815 So.2d 191, 197-98.

II.
In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. Brown v. Coastal Construction & Engineering, Inc., 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing Alexander v. Pellerin Marble & Granite, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Alexander, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Robinson v. North American Salt Co., 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Robinson, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. Winkler v. Wadleigh Offshore, Inc., 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing Wright v. Skate Country, Inc., 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).
At the time Dean was injured, he was being transported to his work site in a vehicle driven by his direct employer, Bob Markle. Markle decided to drive to another construction site to retrieve a maul to complete the foundation work at the SouthMark site. Dean had not yet arrived at the SouthMark construction site on the morning of the injury, and had not commenced performing the work for which he was hired. Normally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course and scope of employment, and thus, are not compensable under the Workers' Compensation Act. McLin v. Industrial Specialty Contractors, 02-1539, (La.2003), 851 So.2d 1135, 1140 (citing Stephens v. Justiss-Mears Oil Co., 312 So.2d 293 (La.1975)); W. Malone & H. Johnson, supra at § 168. This rule, often called the "going-and-coming rule," is premised on the theory that, ordinarily, the employment relationship is suspended from the time the employee leaves work to return home until he resumes his work. McLin, 851 So.2d at 1140 (citing Phipps v. Bruno Const., 00-0480 (La.App. 3 Cir. 11/2/00), 773 So.2d 826 (citations omitted)).
The going-and coming rule is, however, subject to various exceptions, including situations where an employer has involved himself in the transportation of the employee as an incident to the employment agreement, either through furnishing a vehicle or payment of expenses, or where wages are paid for time spent in traveling. Scott v. Smith, (La.App. 2 Cir., 1998), 714 So.2d 7, 11. In Scott v. Smith, the plaintiff was seriously injured in a car accident while he and his co-workers were traveling back to his employer's workshop after finishing a job at a nearby plant. Scott, 714 So.2d at 8. The employees were riding in a truck furnished by his employer and driven by his crew leader. Upon returning to his employer's workshop, Scott's work day did not end at the plant, but instead ended when he "unprep[ped]" the truck. The Second Circuit Court of Appeals found that Scott had been injured during the "course of employment" because he was traveling in a company vehicle driven by a *118 co-worker. Id. at 12. Further, at the time of the accident, the plaintiff was still under the supervision and control of his employer, as he was required to perform more work-related tasks upon his return to the workshop. Id. Finally, the lower court found that this travel was in furtherance of his employer's business interest. Id.
Similarly, in Sims v. Browning Ferris Industries, Inc, the decedent, a temporary worker, was employed as a "hopper", an individual who rode on the outside rear of garbage trucks picking up and depositing garbage in the rear of the truck. Sims v. Browning Ferris Industries, Inc., (La. App. 5 Cir.1993) 613 So.2d 702. On the date of his injury, the decedent was dropped off at his home to take medicine with the agreement that his co-worker return to pick him up in order to "clock out." Sims, 613 So.2d at 703. While the truck was backing up, Sims tripped and was fatally injured by the truck. Id. Despite Sims' status as a statutory employee, the Fifth Circuit Court of Appeal found that his personal errand during work hours did not preclude the application of workers' compensation coverage, as "the risk of falling while doing his job was completely related to and arises out of his employment while he was still `on the clock.'" Id. at 704. See also Timmons v. Silman, 99-3264 (La.5/16/00), 761 So.2d 507, 515-16.
With regard to the instant case, Dean testified that Markle arranged to transport him to and from work, and further, that Markle paid him his hourly wage from 7:00 a.m. to 3:30 p.m. every day, irrespective of whether he was at home, at the SouthMark job site, or traveling to or from the SouthMark job site in Markle's vehicle. Therefore, he was considered "on the clock" at the time his injury occurred. These facts are analogous to the Scott case, where this Court found that workers' compensation benefits were appropriate where an employee was compensated for his travel. In addition, similar to the facts present in Scott and Sims, Dean was injured while under the supervision and control of his employer, and he was expected to perform work-related tasks after the deviation had concluded. Further, just as Sims was injured by falling off of the garbage truck during the performance of his duties, Dean was struck on the head with a hammer thrown off of a roof at a construction site, which is clearly the manner of injury contemplated by workers' compensation legislation, which concerns itself with insuring employees against injuries associated with the risks of employment. In addition, Dean testified before the OWC that he believed that Markle had driven to Graham's construction site for the purpose of retrieving a maul, which was a specific mission entered into to complete the job at the SouthMark site. For these reasons, the workers' compensation hearing officer's determination that Dean's injury occurred in the "course and scope" of his employment for SouthMark, as well as her subsequent award of damages, was not clearly wrong.

DECREE
For the above and foregoing reasons, the judgment of the court of appeal is reversed and the judgment of the Office of Workers' Compensation is reinstated.
REVERSED AND REMANDED.
VICTORY, J., dissenting.
I dissent from the majority opinion because, in my view, (1) SouthMark did not waive its argument that it was not Dean's statutory employer under the requirements La. R.S. 23:1061(A)(2) and (3), as SouthMark sufficiently raised the issue in the lower courts; and (2) the "course and *119 scope" test of La. R.S. 23:1031 applies only to direct employers, not statutory employers, and is therefore inapplicable to the facts of this case.
I disagree with the majority's refusal to decide the central issue in this case, i.e., whether SouthMark was Dean's statutory employer under La. R.S. 23:1061(A)(2) and (3), because "SouthMark failed to raise the issue of Dean's statutory employee status on appeal." Maj. Op. at p. 116. The assignment of error cited by the majority to support of this position states flat out that the "trial court was manifestly erroneous in finding that Jody C. Dean was injured by an accident in the course and scope of his employment as a statutory employee of SouthMark Construction on November 19, 1999." Maj. Op. at 116 (emphasis added). In my view, this was sufficient to raise the issue of Dean's statutory employer status under the applicable law.[1]
The statutory law is clear in the statutory employment area, and we are obligated to apply the correct law applicable to statutory employers, regardless of what the parties may have argued in the lower courts. The 1997 amendments to La. R.S. 23:1061 set forth two specific circumstances under which a statutory employer will be liable for workers' compensation benefits to a statutory employee. The first is the "two-contract" theory under La. R.S. 23:1061(A)(2), under which (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters a subcontract for all or part of the work performed. No argument was made that the above factors were present in this case to establish that SouthMark was Dean's statutory employer, as there simply was no contract entered into by SouthMark with any entity other than the employee's immediate employer.
The second basis for finding a statutory employer-employee relationship is found in La. R.S. 23:1061(A)(3). By virtue of the 1997 amendments, except in cases under the "two-contract" theory, a statutory employer-employee relationship will be found to exist under La. R.S. 23:1061(A)(3) only when: (1) the work is part of the principal's trade, business, or occupation, which in turn is defined as work which is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services and (2) there is a written contract between the principal (i.e., SouthMark) and the contractor (i.e., Markle) which recognizes the principal as a statutory employer. Johnson, Louisiana Civil Law Treatise, Vol. 14, Workers' Compensation Law and Practice, 4th Ed., 2002, Sec. 363, p. 170. The 1997 amendments clearly state that such a relationship under La. R.S. 23:1061(A)(3) "shall not exist ... unless there is a written contract ... which recognizes the principal as a statutory employer." "If the contract does not contain a statement of the existence of such a relationship it cannot be found to exist." Johnson, supra at Sec. 126, p. 252.[2] This *120 section clearly requires a written contract which recognizes the principal as a statutory employer, which did not exist in this case. Therefore, I would affirm the judgment of the court of appeal based on the plaintiff's failure to meet the requirements of La. R.S. 23:1061(A)(2) and (3).
However, even assuming that this issue in not before us because defendant failed to raise the issue on appeal, whether Dean was injured in the course and scope of his employment is not the relevant determinative factor in this case. The remaining issue to be litigated would be whether the work is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services, not whether, as the majority has framed the issue, whether Dean was acting in the "course and scope" of his statutory employment with SouthMark when the accident occurred.
As the court of appeal correctly recognized, the liability of a statutory employer is not as broad as that of a direct employer. The direct payroll employee of the principal is governed by La. R.S. 23:1035, which requires him to demonstrate that he is performing services "arising out of and incidental to his employment ... in the course of his employer's trade, business or occupation." H. Alston Johnson, III, Louisiana Civil Law Treatise, Vol. 13, Workers' Compensation Law and Practice, 4th Ed., 2002, Sec. 126, p. 254 (citing La. R.S. 23:1035(A)). On the other hand, in order to assert a compensation claim against an alleged principal, the employee of a contractor must demonstrate that he was executing work which was "a part" of the trade, business or occupation of the principal as it is defined after the 1997 amendments. Id.[3]
The cases cited by the majority in support of the holding that Dean's accident occurred in the course and scope of his employment are not applicable to this case. Timmons v. Silman, 99-3264 (La.5/16/00), 761 So.2d 507 and Scott v. Smith, 30,330 (La.App. 2 Cir.1998), 714 So.2d 7 involved direct employees under La. R.S. 23:1035, not statutory employees. Sims v. Browning Ferris Industries, Inc., 613 So.2d 702 (La.App. 5 Cir.1993) involved a statutory *121 employee, but was decided before the 1997 amendments to La. R.S. 23:1061, which changed the test to provide that "work shall be considered part of the principal's trade, business or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Indeed, were we deciding today whether Dean was in the course and scope with Markle, his direct employer, R.S. 23:1031 would be applicable, and a finding that Dean was in the course and scope of his employment while on his way to work for Dean might not be manifestly erroneous. However, where the issue is whether LWCC is liable for workers' compensation benefits as Dean's statutory employer, the course and scope test applicable to direct employers never even comes into play.
For all of the above reasons, I respectfully dissent.
WEIMER, J., dissents for reasons assigned by VICTORY, J.
NOTES
[1] Dean v. SouthMark Construction, 02-0028 (La.App. 1 Cir. 12/20/02), 837 So.2d 659
[2] Id. (reh'g denied 3/10/03).
[3] Dean v. SouthMark Construction, 03-1051 (La.6/6/03), 845 So.2d 1075
[1] I note, however, that this assignment of error incorrectly posits the additional argument as whether "Dean was injured in the course and scope of his employment," when, as discussed herein, the "course and scope" test is inapplicable in the statutory employment situation.
[2] The 1997 amendments to La. R.S. 23:1061 provided some very important additions to the statutory employer determination. First, the amendments elaborated on the meaning of what was considered a part of the trade, business, or occupation of the alleged principal. Second, they established a rebuttable presumption of the existence of a statutory employer relationship, actually using the term "statutory employer" for the first time in the Act. Johnson, supra at Sec. 122, p. 226. Act 315 of 1997 provided that "work shall be considered part of the principal's trade, business or occupation if it is an integral part of or essential to the ability of the principal to generate that individual's principal's goods, products, or services." The amendments further provided that, except in the "two-contract" situation under La. R.S. 23:1061(A)(2), a "statutory employer relationship shall not exist ... unless there is a written contract between the principal and the contractor which ... recognizes the principal as a statutory employer." When there is such a written contractual recognition of the relationship, there is then a "rebuttable presumption" of such a relationship which may be overcome "only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Id.
[3] The reason for allowing a more liberal attitude for imposing liability on a direct employer is clear. The direct employer has the discretion to direct his employees in the work to be performed, and when the employee is injured doing work which he was ordered to perform or which arises out of or is incidental to this work, compensation for him is not only the primary, but is the only remedy against his employer. Id. On the other hand, the principal should not ordinarily be subjected to the compensation claims of his contractor or subcontractor's employee's, those claims should rest with the direct employer. La. R.S. 23:1061 serves as a secondary protection for the injured worker, rather than a the primary remedy, and should only be invoked when the principal seeks to avoid his compensation obligation by farming out part of his own normal operations to a contractor. Id.