# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-831


**JOSEPH P. ROY**

**VERSUS**

**HUB CITY PAVING CONTRACTORS**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION DISTRICT # 4
PARISH OF LAFAYETTE, NO. 03-08285
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**


**Gregory Bryan Dean**
**Dean Law Office**
**P. O. Drawer 280**
**Opelousas, LA 70571-0280**
**Counsel for Claimant/Appellant:**
     **Joseph P. Roy**

**H. Douglas Hunter**
**GUGLIELMO, LOPEZ, ET AL**
**P. O. Drawer 1329**
**Opelousas, LA 70571-1329**
**Counsel for Defendant/Appellee:**
     **Hub City Paving Contractors**

Pickett, J.

The claimant, Joseph P. Roy, appeals a judgment of a Workers' Compensation Judge (WCJ) dismissing his suit for benefits arising from an accident allegedly sustained in the course and scope of his employment with the defendant, Hub City Paving Contractors. We affirm the judgment of the WCJ.

## FACTS

The claimant alleges that he injured his back in a work related accident on August 27, 2003. The alleged accident was unwitnessed and the defendant claims that the claimant never reported an accident. The preceding is the sum of uncontested "facts" in the record pertaining to the occurrence of or absence of an accident. As our decision rests on the WCJ's determination that the claimant failed to prove an accident, we pretermit any further discussion of the facts at this point and will proceed to our analysis of the WCJ's decision.

## LAW AND DISCUSSION

In *Monceaux v. R & R Construction*, 05-533, pp. 5-7 (La.App. 3 Cir. 12/30/05), __ So.2d __, __-__, this court had the occasion to discuss both the standard of review and a claimant's burden of proof in unwitnessed workers' compensation cases:

> In *Dean v. Southmark Const.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117, the supreme court discussed the standard of review in workers' compensation cases:
>
> > In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal Construction & Engineering, Inc.*, 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander*, 630 So.2d at 710. Where there is conflict in the

1

testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

Recently, this court addressed a claimant's burden in proving the he/she suffered a work-related accident:

In order to recover workers' compensation benefits, an injured employee must prove by a preponderance of the evidence that he suffered a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). An "accident" is defined as an "unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

The Louisiana Supreme Court, in *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992), expounded on what proof will satisfy an employee's burden in proving a work-related injury:

A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, 13 *Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow

2

> workers, spouses or friends. Malone & Johnson, *supra*; *Nelson v. [Roadway Express, Inc.*, 588 So.2d 350 (La.1991) ]. Corroboration may also be provided by medical evidence. *West, supra.*

In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822, 824 (La.App. 2d Cir.),*writ denied*, 536 So.2d 1200 (La.1988) (collecting cases).

As stated in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Bigge v. The Lemoine Co.*, 04-1191, pp. 3-4 (La.App. 3 Cir. 3/2/05), 896 So.2d 269, 271, 72.

In her written reasons for judgment, the WCJ summarized the testimony of the claimant, that of Mr. Ray Courville, the work-site supervisor, and that of Johnny Broussard, "a working co-owner of the business . . . [who] was intermittently on the job site."

The WCJ noted a major inconsistency between the claimant's deposition and trial testimonies: "At trial, Mr. Roy said he was injured while carrying the water pump while pumping out ditches to lay pipe. In his deposition Mr. Roy stated the accident occurred while he was carrying the generator to start up the machine Ray Courville was working on."

Further, she commented that Mr. Courville testified that the claimant had shown up on Monday morning, August 24, 2003, limping and that this had happened before. On those occasions, when questioned, he had explained that it was his arthritis acting up. In her reasons for judgment, the WCJ stated that Mr. Courville described the project on which Hub City was working during the week of August 24-28, 2003, as "a new road project as opposed to a resurfacing project." She stated that according to Mr. Courville's testimony, Hub City was doing site preparation work. She explained that Mr. Courville testified that when engaged in site preparation the contractor "strips the grass, cuts the ditches then builds up the road. If pipes are needed, they are put in. Then a transport truck drops the powdered cement and the contractor chops the powder into the dirt with a stabilizer, which is similar to a large tiller, to make the base." Following those steps, the road-bed is packed, bladed, re-packed and then watered down. Finally, "[t]he road is then tight-bladed, shaved to make it smooth, and then primed." Further, the WCJ recounted that Mr. Courville stated that on "the day of the alleged accident, Roy [the claimant] would have been fixing pin flags, eighteen inch flags to mark the center of the road, and sweeping cement powder with a broom." The WCJ also noted that, according to Mr. Courville, neither the water pump nor the generator was used on this particular project.

The WCJ's reasons for judgment further note that Mr. Broussard testified that "he was on the site on Wednesday and saw no generators or pumps;" that when he

4

took the claimant home on Thursday, the claimant told him that his arthritis was acting up and had the claimant reported an on the job injury, he (Mr. Broussard) would have taken the claimant to the hospital.

The WCJ also noted that while the claimant and his ex-sister-in-law, Ms. Barbara Savoie, "both testified that Ms. Savoy's [sic] brother, John Portalis, brought Mr. Roy to the hospital on that first post-accident visit and that Mr. Portalis told the doctor what had happened. However, Mr. Portalis denied giving the doctor any information."

Hence, at the close of testimony on July 7, 2004, the WCJ was unsure as to how this case should be decided. The following, from her written reasons for judgment, explain the action she took at that time and the results of that action:

> At the conclusion of trial, the WCJ had questions regarding the credibility of all the witnesses, but particularly that of Roy and Courville. Roy was not patently credible, but this could be attributable to his very limited intellectual capacities, his hearing problem and speech impediment. Courville was not patently incredible, but it was apparent that he and Roy did not have a particularly friendly relationship. The WCJ therefore requested additional evidence which the WCJ believed would either support or discredit their testimony. One issue in dispute was whether or not Mr. Roy was working another job on the weekends. Mr. Roy and his sister-in-law, Barbara Savoy [sic], testified that Mr. Roy did not do other work on the weekends. Mr. Broussard and Mr. Courville testified that Mr. Roy worked another job on weekends and in fact had shown up at work for Hub City on a Monday with flash burns from welding on the other job and was sent home to heal. Mr. Roy denied this. The WCJ therefore requested payroll documentation from the employer for the time Mr. Roy was supposed to have missed work due to flash burn. The WCJ also requested the cement tickets that Mr. Courville stated would corroborate his testimony as to the work being performed during the week in question.

> The evidence requested by the WCJ at the conclusion of the trial corroborated the employer's version of events. The handwritten timesheet [sic] for the week ending June 27, 2003 reflects that "Joe" was out part of the week for "flash burn from other job." The check register for that pay period is in line with the handwritten time sheet. Employer's counsel offered to make additional witnesses available to

testify on those facts if necessary. The cement tickets confirmed deliveries on August 22 and August 27 in accordance with Ray Courville's testimony. The evidence requested therefore tended to discredit Mr. Roy's testimony and corroborate the testimony of Mr. Courville and Mr. Broussard.

After considering the elements of the burden of proof as set out by the Louisiana Supreme Court, the WCJ stated that "Mr. Roy has problems with both elements required under *Bruno* but the more significant problem is with the first element, that is whether other evidence discredits or casts serious doubt upon his version of the incident." She concluded that "[g]iving Mr. Roy the benefit of the doubt, and viewing the evidence from his perspective, the probabilities are at best evenly balanced. Mr. Roy's claim must therefore be dismissed for failure to prove the occurrence of an accident by a preponderance of the evidence."

Our review of the record confirms the accuracy of the WCJ's written reasons for judgment as to the testimony cited therein. Furthermore, after considering that testimony, the evidence submitted by both parties, and the burden of proof as set out in *Bruno* and the standard of review as discussed in *Dean* and reviewed by this court in *Monceaux*, we cannot say that the conclusion reached by the WCJ is either "manifestly erroneous" or "clearly wrong."

Accordingly, for the reasons stated above, the judgment of the Office of Workers' Compensation is affirmed. Inasmuch as the claimant/appellant is appearing in forma pauperis, we pretermit the assignment of costs.

**AFFIRMED.**