MAX N. TOBIAS, JR., Judge.
hThe claimant/appellant, James Randall Laird, appeals from a judgment by the Office of Workers’ Compensation (“OWC”) that denied his claim for penalties, costs, and attorney’s fees. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
In his disputed claim for compensation, Mr. Laird alleged that the defendant/ap-pellee, Highpoint Southwest Services, and its insurer, the Hartford Insurance Company (hereinafter collectively referred to as “Hightower”), failed to comply with a Consent Judgment signed by the parties. Additionally, Mr. Laird claimed that he was entitled to an award of attorney’s fees and penalties, as well as reimbursement of costs.
The matter was set for trial in December 2009; however, trial was had on briefs and documentary evidence filed into the *930 record. On 11 January 2010, the OWC rendered judgment in favor of Hightower, dismissing Mr. Laird’s claim with prejudice. This timely appeal followed.
|2In workers’ compensation cases, the appropriate standard of review is the manifest error-clearly wrong standard. Dean v. Southmark Construction, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117; MacFarlane v. Schneider National Bulk Carriers, Inc., 07-1386, p. (La.App. 4 Cir. 4/30/08), 984 So.2d 185, 188. If, however, the trial court comitts a legal error, a de novo review is applied. Id.
In the instant case, we find no error of law by the OWC. Thus, we apply the manifest error-clearly wrong standard of review.
The issue presented in this case is whether the OWC appropriately applied La. R.S. 23:1201 G, which provides in pertinent part:
G. If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers’ compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate. [Emphasis supplied.]
Pursuant to the Consent Judgment entered into by the parties and approved by the OWC on 17 March 2009, Hightower was required to perform certain obligations as outlined therein: (1) pay penalties and attorney’s fees; (2) provide Mr. Laird with (a) a therapeutic mattress, (b) therapeutic shoes, (c) a shower massage device; and (3) pre-authorize massage therapy. Mr. Laird claims that | oHightower failed to perform any' of their obligations in a timely manner as required by the statute.
It is undisputed that the payment of penalties and attorney’s fees occurred on 21 April 2009, five days after the thirty-day deadline provided by La. R.S. 23:1201 G. On 25 March 2009, counsel for High-tower sent Mr. Laird’s counsel a motion to dismiss, advising that once the motion to dismiss was signed and returned, the checks would be sent. The executed motion to dismiss was not returned.
The Consent Judgment did not require that a motion to dismiss be signed before the payment of penalties and attorney’s fees by Hightower. We find the record reflects nothing outside Hightower’s control to excuse the untimely payment of that award. Thus, we reverse the trial court on this issue and award Mr. Laird the amount of $2,400.00 for the late payment. Because La. R.S. 23:1201 G requires Hightower to pay reasonable attorney’s fees, we must remand this matter to the OWC for the purpose of determining same for this one item.
By letter dated 1 April 2009, counsel for Hightower informed Mr. Laird’s counsel that each individual item set forth in the Consent Judgment had been author *931 ized; the ordering and delivery of the medical devices/equipment would be arranged by an independent vendor, PMSI. Mr. Laird’s counsel was told that if PMSI did not contact him within a day or two of the date of the letter, he should contact PMSI at its toll-free number that was provided in the letter. Hightower’s counsel also requested a call if Mr. Laird had any problems in securing the devices/equipment.
On 21 April 2009, the appellees’ counsel learned that none of the devices/equipment had been delivered. This was the first notice Hightower and |4their counsel received concerning problems with the mattress, shoes, and shower massage device (showerhead).
In a letter dated the same day, counsel for Hightower stated in pertinent part:
As for the showerhead and shoes, I explicitly stated in my April 1 letter to you that they are authorized. Silvo [claims adjuster for the Hartford] gave PMSI your number, and I gave you PMSI’s number, and asked you to call them if you didn’t hear from them in the next few days. We have no idea what type of shoes, what size shoes, what brand of shoes, etc. that Mr. Laird needs, as it was not specified in Dr. Bourgeois’ prescription. Similarly, we do not know what type of showerhead Mr. Mr. Laird needs, and it was not specified in Dr. Bourgeois’s prescription. Mr. Laird has to go to pick out what he needs.
We called PMSI and authorized everything, and we gave them your number to set everything up for Mr. Laird. Similarly, I gave you the number to PMSI in my April 1, 2009, letter, as you asked me to do in a telephone conversation after we settled this matter. In accordance with our Consent Judgment, everything was authorized, and I do not think it is asking too much for Mr. Laird to go pick out his shoes and showerhead.
By letter dated 22 April 2009, Mr. Laird’s counsel wrote to opposing counsel stating that, after “lengthy discussions” with PMSI, he learned that the mattress would be delivered in two to three weeks, the shoes selected by Mr. Laird were on back order, and the shower massage device desired by Mr. Laird had been discontinued, requiring him to select a different model. The mattress was delivered on 22 May 2009 and the shoes were received on 8 May 2009; the record does not reflect the exact delivery date of the showerhead, however, it was received after 27 May 2009.[1] No evidence exists in the record concerning when |.-discussions began with PMSI or that delivery of these items could not have been timely made.
Finally, with regard to the massage therapy, the record reflects that Hightower received a prescription from Mr. Laird’s treating physician ordering massage therapy in October 2008 for three massages per week for six weeks. The 1 April 2009 letter stated: “[t]he massage therapy is authorized. Please have Mr. Laird set up *932 an appointment and have the facility call for authorization!;,].... ” It was referring to the October 2008 prescription. The record does not reflect a reason for a subsequent prescription from Mr. Laird’s psychiatrist in May 2009. It was Mr. Laird’s job to set an appointment for massage therapy. We find this argument to be without merit.
We find that Hightower acted in good faith by authorizing every item set forth in the Consent Judgment. Hightower could not deliver a mattress, shoes, or shower-head without Mr. Laird’s cooperation. It is disingenuous for Mr. Laird to wait until after the thirty-day deadline to advise Hightower or its counsel of his difficulties and then seek further penalties and attorney’s fees in the process.
But for the payment of the penalties and attorney’s fees, we find that Hightower did everything within Hightower’s power to timely satisfy the Consent Judgment within thirty days from its signing. Based on the foregoing, we reverse the OWC. We award Mr. Laird the sum of $2,400.00 and remand this matter to the trial court for the purpose of determining reasonable attorney’s fees for the | fifailure to timely pay the previous penalty and attorney’s fees. In all other respects, the judgment is affirmed.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. With respect to the mattress, it is undisputed that before the Consent Judgment was signed, Hightower had authorized, and even attempted to deliver, a Tempurpedic mattress to Mr. Laird’s home. However, Mr. Laird did not like the mattress and refused delivery. After the Consent Judgment was signed, Hightower authorized a "higher model” mattress, although one had not been prescribed by Mr. Laird’s treating physician. A new box spring was also authorized and delivered, although the Consent Judgment did not require it.