# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 14-206

DONALD LESTER NOWELL

VERSUS

NABORS DRILLING USA, LP

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, DOCKET NO. 12-05760
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis
M. Keaty, Judges.

**AFFIRMED.**

Rusty Savoie
112 Innwood Drive, Suite F
Covington, Louisiana 70433
(985) 898-3434
COUNSEL FOR CLAIMANT/APPELLANT:
    Donald Lester Nowell


Kevin A. Marks
Jennifer L. Sinder
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, Louisiana 70139
(504) 525-6802
COUNSEL FOR DEFENDANT/APPELLEE:
    Nabors Drilling USA, LP

**GENOVESE, Judge.**

In this workers' compensation case, Claimant/Appellant, Donald Lester Nowell, appeals the judgment of the Office of Workers' Compensation (OWC) in favor of Defendant/Employer, Nabors Drilling USA, LP (Nabors), finding that Mr. Nowell failed to meet his burden of proving that he sustained a compensable, work-related injury. For the following reasons, we affirm.

## DISCUSSION OF THE RECORD

Mr. Nowell filed a disputed claim for compensation on August 17, 2012, seeking: (1) "a determination of whether he is entitled to treatment for shoulder pain/discomfort[]"; (2) "a determination of whether the physical therapy approved by the Employer is consistent with that prescribed by the Employer's choice of physician[]"; and, (3) "arbitrary and capricious penalties and attorney[] fees."

Mr. Nowell alleges that on May 12, 2012, while working as a derrickman for Nabors at a land-based rig near Shreveport, Louisiana, he injured his lower back and right shoulder in the course and scope of his employment. Due to Mr. Nowell's complaint of lower-back pain, he was transported to the Occupational Medicine Clinic in Lafayette, Louisiana, where he was evaluated by Dr. Frank Baniewicz.

Mr. Nowell testified at trial that he was in the middle of a fourteen-day hitch when he injured his back. He explained that he injured his back while in the process of tripping pipe, which he described as maneuvering drilling pipe into a hole. According to Mr. Nowell, the pipe "fell in the wrong direction[]" so he "put a rope around it to pull it back. That process is what hurt my back." Afterward,

Mr. Nowell was transported[1] four-and-one-half hours to the Occupational Medicine Clinic in Lafayette. Dr. Baniewicz performed x-rays and recommended over-the-counter pain medication and rest. However, Mr. Nowell was found to have no physical impairment; therefore, Dr. Baniewicz deemed him capable of returning to work. Mr. Nowell then returned to the land-based rig and did work for six of the remaining eight days of his fourteen-day hitch.

> Specifically, Dr. Baniewicz's medical records reveal, in pertinent part:

> The patient works a 14 and 14 hitch[,] and he is just about one week into his hitch. We talked about protected [sic] activities for the remainder of his hitch[,] and then he will have 14 days before he is expected to be back to work. We talked about what to expect in terms of symptomatology and actually suspect that he will tighten up and get a little worse before he gets better.

According to Mr. Nowell, two days later, he began feeling pain in his shoulder, so he called for Dr. Baniewicz. Dr. Baniewicz's medical records do not reflect that Mr. Nowell's shoulder pain was related to the May 12, 2012 incident. Dr. Baniewicz's May 14, 2012 Chart Notes state:

> This is a note to document that [Mr. Nowell] called in to let me know that he was having a little bit of tightness in his shoulder. He didn't know if it was related to his back at all[,] but I encouraged him to call me if he had any concerns[,] and so he wanted to let me know.

> It sounds like things are going fine at the facility where he is working. He has been using Aleve and Tylenol without difficulty. It seems to be helping. His sciatic complaints seem to be less than when I talked to him last time.

> Basically, it doesn't sound to be any issue at the present time[,] but [Mr. Nowell] wanted to let me know about his shoulder. He understands that would not be related to his back at this time.

Mr. Nowell testified that he was not told by Dr. Baniewicz that his back and shoulder injuries were unrelated. In fact, at trial, Mr. Nowell disputed the veracity

---

[1]Mr. Nowell referred to "Scooter," a Nabors' safety technician, as the person who transported him to Lafayette.

2

of Dr. Baniewicz's medical records. He denied speaking to Dr. Baniewicz on May 14, 2012, and he denied that he ever told Dr. Baniewicz, or anyone on his staff, that his shoulder pain was not related to his back condition. According to Mr. Nowell, Dr. Baniewicz called him three weeks later and "started discussing with [him] a case that [had] to do with [Mr. Nowell's] cousin." This is the first instance of a dispute Mr. Nowell had with a treating physician.

Mr. Nowell claims that he was allowed to rest in the crew trailer for two days and that he returned to work because he felt pressured to do so. He worked until the end of his fourteen-day hitch on May 20, 2012.

On May 23, 2012, Mr. Nowell saw Dr. Bruce Senter at the Mississippi Spine Clinic.[2] Dr. Senter's medical records note that he saw Mr. Nowell for complaints of lower-back pain, but there is no notation of shoulder pain. Mr. Nowell claims that he did report shoulder pain to Dr. Senter. In his deposition, Dr. Senter testified that in his initial visit with Mr. Nowell, he observed normal motor strength and a normal straight-leg test. He reviewed Mr. Nowell's x-rays which were performed by Dr. Baniewicz, and he "thought they were also normal." Dr. Senter diagnosed Mr. Nowell with "a low back strain or a lumbar strain." He recommended physical therapy, prescribed pain medication and muscle relaxers, ordered a lumbar MRI, and restricted Mr. Nowell from working until his follow-up appointment in three weeks. When Mr. Nowell next saw Dr. Senter on June 13, 2012, Dr. Senter found the results of the MRI normal[3] and found Mr. Nowell able to return to work without restrictions. Notably, Mr. Nowell had not received any physical therapy as

_____

[2]Mr. Nowell lives in Vicksburg, Mississippi.

[3]The MRI was performed on June 13, 2012, the same day of Mr. Nowell's follow-up appointment with Dr. Senter.

Dr. Senter had recommended. When asked at trial why he had not attended physical therapy, Mr. Nowell explained, "I was asked by you, and it was discussed with Bonnie Faulkenberry, the adjuster for FARA, that it would not be wise to do the MRI till -- I mean, not to do the physical therapy until after the MRI." According to Mr. Nowell, Dr. Senter was dismissive of his medical complaints, and he was released from Dr. Senter's care because this was a workers' compensation matter. This is the second instance of a dispute Mr. Nowell had with a treating physician.

At Nabors' request, Mr. Nowell was evaluated on July 10, 2012, by orthopedist, Dr. Michael Duval. According to Dr. Duval, Mr. Nowell complained of lower-back pain and right leg numbness. Mr. Nowell did not report shoulder pain at this initial evaluation.

In October, 2012, Mr. Nowell filed a request to change treating physicians,[4] alleging that his original choice, Dr. Senter, did not treat workers' compensation patients.[5] Mr. Nowell's request was granted on November 2, 2012.

On November 14, 2012, Mr. Nowell saw orthopedic surgeon, Dr. Douglas Brown. Dr. Brown recommended a lumbar epidural steroid injection at L5-S1 and restricted him from returning to work. According to Dr. Brown, Mr. Nowell had a chronic back condition which was aggravated by his work accident.

Mr. Nowell saw Dr. Duval again on December 13, 2012. According to Dr. Duval, Mr. Nowell reported lower-back pain, shoulder pain, urinary and bowel issues, and sexual dysfunction. Dr. Duval ordered a repeat[6] lumbar MRI.

---

[4]Nabors contested this request.

[5]Notably, Dr. Senter's deposition was not taken in this matter until February 18, 2013.

[6]An MRI had been performed on June 13, 2012, at the direction of Dr. Senter.

4

According to Dr. Duval, the findings on the MRI were consistent with the normal aging process.

Mr. Nowell was again seen by Dr. Brown on February 13, 2013. Dr. Brown recommended that he receive injections at L2-3 and L3-4.

At trial on April 2, 2013, Nabors did not dispute the occurrence of Mr. Nowell's accident; instead, it challenged Mr. Nowell's allegation that the accident caused injury to the degree alleged by him, and, in turn, Nabors contested Mr. Nowell's entitlement to indemnity and medical benefits. The workers' compensation judge (WCJ) took the matter under advisement and accepted post-trial memoranda. On August 19, 2013, the WCJ issued oral reasons for judgment, denying all relief sought by Mr. Nowell. In her oral reasons, the WCJ elaborated:

> I have to say that I do regret ordering the change of physican. I do feel that I was mislead [sic]. It was a consideration of mine in allowing the change of choice of physician that Dr. Senter did not accept workers' comp patients. And while I didn't focus on this exclusively in my ruling on that issue, I did mention how uncomfortable I was dealing with doctors from a different state and not knowing whether or not those doctors would accept [the] Louisiana Fee Schedule.
>
> So, after reading Dr. Senter's deposition and his unequivocal statement that he did treat workers' comp patients, I have to say, had I had that information at the time of the hearing, I would not have allowed the change of choice of physician. Since I did order it, any services provided by Dr. Brown do need to be paid for, but I don't order any further treatment with Dr. Brown or otherwise.
>
> I feel I was mislead [sic], both in the change of physician hearing and in briefing where plaintiff's counsel attempts to argue that Dr. Senter didn't know what he was talking about or was confused about ordering the MRI. I think the only confusion Dr. Senter experienced was that[,] in his opinion[,] appropriate medical treatment dictated waiting six weeks or so before obtaining the MRI, and so that's why Dr. Senter originally didn't think he had ordered the MRI. I think when Mr. Nowell showed up, talking about his attorney, the MRI

was obtained that day. So, any confusion was simply generated, basically, by the claimant himself.

There were three orthopedist specialists, each having a different opinion. Though, all are of the opinion that there is no serious condition requiring surgery. There were multiple instances of questions regarding the claimant's trustfulness. For example, his testimony about Dr. [Bruce] Senter not taking comp patients, his bowel and bladder and sexual misfunction [sic] complaints that Dr. [Michael] Duval mentioned. He told Dr. [Douglas] Brown on November 14, 2012, that his bowel movement frequency has recently changed to diarrhea, and this was four months after he told Dr. Duval of his bowel problems. Maybe four months is recent, maybe not. It just seems as though Mr. Nowell was game playing and doctor shopping.

So I don't find Mr. Nowell credible; and[,] for that reason, I don't believe the evidence preponderates in his favor. He is not entitled to any further benefits.

Concomitant with her oral reasons, the WCJ signed a Judgment on September 6, 2013, which decreed:

Employer, Nabors Drilling USA, LP, reasonably controverted the claim, and that Claimant, Donald Lester Nowell, is entitled to no further indemnity or medical benefits;

. . . Employer, Nabors Drilling USA, LP, was responsible for Claimant's two (2) office visits with Dr. Douglas Brown on November 14, 2012[,] and February 13, 2013. Counsel for Nabors Drilling USA, LP, confirmed that payment was issued for these two (2) office visits. Accordingly, Nabors Drilling USA, LP, has satisfied its obligations to pay all compensable medical benefits on behalf of [Mr. Nowell].

Mr. Nowell appeals that judgment.

## ASSIGNMENTS OF ERROR

Mr. Nowell assigns the following errors for our review:

1. The decision of the Office of Workers' Compensation was manifestly erroneous in failing to award Appellant indemnity benefits.

2. The decision of the Office of Workers' Compensation was manifestly erroneous in failing to award Appellant additional medical treatment.

6

3.   The decision[] of the Office of Workers' Compensation was manifestly erroneous in failing to award penalties and attorney[] fees.

## LAW AND DISCUSSION

Each of Mr. Nowell's three assignments of error address the WCJ's determination that he failed to prove that the accident produced the alleged injuries. Nabors argues that the evidence refuted the occurrence of a compensable work-related injury.

This court, in *Lynch v. A Door Works, Inc.*, 11-414, p. 3 (La.App. 3 Cir. 10/5/11), 72 So.3d 1033, 1035, *writ denied*, 11-2457 (La. 1/13/12), 77 So.3d 965, set forth the standard of review to which this court must adhere, as follows:

> The standard of review applied in workers' compensation cases to a WCJ's finding of fact is the "manifest error—clclearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117. The court of appeal may not set aside the findings of the WCJ "unless they are found to be clearly wrong in light of the record reviewed in its entirety." *Id.* (quoting *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La. 1/14/94), 630 So.2d 706, 710). "[E]ven where the appellate court is convinced it would have weighed the evidence differently if it had been sitting as trier, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety." *Winford v. Conerly Corp.*, 04-1278, pp. 15-16 (La. 3/11/05), 897 So.2d 560, 569-70.

We find no merit to Mr. Nowell's contention that the WCJ erred in finding that he failed to meet his burden of proving that he sustained a compensable work-related injury.

An employee is entitled to compensation benefits if he or she suffers a personal injury by an accident arising out of and in the course and scope of employment. La.R.S. 23:1031(A). Louisiana Revised Statutes 23:1021(1) (emphasis added) states: "'Accident' means an unexpected or unforeseen actual,

7

identifiable, precipitous event happening suddenly or violently, with or without human fault, *and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration*." In order to receive compensation benefits, Mr. Nowell must prove that his accident produced his lower-back and shoulder injuries. That, he did not do.

Mr. Nowell had the burden of proving that the accident produced the alleged injuries. *Gradney v. Louisiana Commercial Laundry*, 09-1465 (La.App. 3 Cir. 5/12/10), 38 So.3d 1115. However, the degree of Mr. Nowell's alleged injury was not substantiated by the medical evidence presented in this case. Therefore, the WCJ had to consider the plausibility of Mr. Nowell's testimony.

In *Gradney*, 38 So.3d at 1119, we discussed a claimant's testimony relative to whether it is sufficient to meet the requisite burden of proof as follows:

> Generally, a workers' compensation claimant must prove by a preponderance of the evidence that he has suffered a work-related accident and injury. *Smith v. Town of Olla*, 07-384 (La.App. 3 Cir. 10/3/07), 966 So.2d 1165.

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. *Id*.

> *Id*. at 1169 (quoting *Hebert v. C.G. Logan Constr., Inc.*, 06-612 (La.App. 3 Cir. 11/2/06), 942 So.2d 77, 80).

After thoroughly reviewing the evidence and considering the detailed oral reasons for judgment, we find that the WCJ's factual conclusion that Mr. Nowell did not suffer a compensable work-related injury is reasonably supported by the

evidence. There are numerous inconsistencies between the medical evidence and Mr. Nowell's testimony, thereby calling into question Mr. Nowell's credibility. The WCJ clearly had serious doubt as to Mr. Nowell's veracity, particularly after Dr. Senter impugned Mr. Nowell's honesty relative to his not treating workers' compensation patients when Mr. Nowell requested to change treating physicians. The WCJ felt misled by Mr. Nowell, stating in her oral reasons that had she had Dr. Senter's testimony at the time, she would not have granted the request to change treating physicians. We find that it was reasonable for the WCJ to cast serious doubt upon Mr. Nowell's testimony and credibility in general and find that the medical evidence did not corroborate that the accident produced the alleged injuries; therefore, we find that the WCJ was not clearly wrong in her factual findings.

Under the applicable standard of review, though there are two permissible views of the evidence, we cannot say that the WCJ was manifestly erroneous or clearly wrong. The evidence in the record supports the conclusion that Mr. Nowell did not meet the requisite burden of proof for entitlement to workers' compensation benefits. Because we have found no error in the WCJ's ruling that Mr. Nowell failed to prove that he suffered a compensable work-related injury, we need not address the remaining issues of entitlement to indemnity benefits, medical treatment, penalties, and attorney fees. The judgment of the OWC is affirmed.

**DECREE**

For the foregoing reasons, the judgment is affirmed. Costs are assessed to Claimant/Appellant, Donald Lester Nowell.

**AFFIRMED.**