704 So.2d 8 (1997)
John B. BROWN
v.
COASTAL CONSTRUCTION & ENGINEERING, INC., et al.
No. 96 CA 2705.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
*9 Walter A. Bond, Baton Rouge, for Defendant/Appellant Coastal Construction & Engineering.
E. Scott Hackenberg, Baton Rouge, for Plaintiff/Appellee John Brown.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal by Coastal Construction & Engineering (Coastal) from a judgment rendered by the Workers' Compensation judge awarding claimant, John Brown (Brown) maximum weekly Temporary Total Disability (TTD) benefits and medical benefits. The only issue on appeal is whether claimant was in the course and scope of his employment at the time of his accident.

FACTS
On August 7, 1995, Brown was injured in an automobile accident which occurred at approximately 6:25 a.m. as he was traveling from New Iberia to Lafayette on Highway 90. Brown was employed as a surveyor by Coastal which had three job sites operating in Lafayette at the time.
Brown's residence was in Denham Springs, and he spent the night before the accident with his family at his residence. On other occasions, Brown spent some nights of the week at a motel in New Iberia to reduce his trips back and forth from Denham Springs to the Coastal job sites in Lafayette. Brown usually provided transportation for his co-worker, Steve Shatoska (Shatoska) (who stayed in the motel), to the job sites and used the motel room to store the equipment to be used. On the morning of August 7, 1995, when Brown arrived at the New Iberia motel, Shatoska indicated he was not going to work due to illness. Brown then proceeded to load the Coastal equipment into his truck and drive towards Lafayette. The accident occurred when another vehicle pulled across Highway 90 in front of Brown's truck.
Brown filed a claim for workers' compensation benefits. The parties stipulated to all matters except whether Brown was within the course and scope of his employment for Coastal at the time of the accident. After trial, the workers' compensation judge held Brown was within the course and scope of employment at the time of the automobile accident and awarded Brown weekly TTD benefits and medical expenses.
Coastal filed a suspensive appeal with the following assignments of error:
1. When an individual is injured in an automobile accident, prior to the start of the work day, while traveling in his personal truck, without being reimbursed, the Office of Workers' Compensation [judge] committed legal error in failing to consider if the accident "arose out of" and "in the course of" his employment.

*10 2. When an individual is injured in an automobile accident at 6:25 a.m. while traveling in his personal truck, without being reimbursed, from his home to a construction site where he was to begin working at 7:00 a.m., the Office of Workers' Compensation [judge] committed manifest error in holding that the individual was within the course and scope of his employment at the time of the accident.

COURSE AND SCOPE OF EMPLOYMENT
LSA-R.S. 23:1031 provides in pertinent part:
If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereafter designated.
As a general rule, accidents which occur while an employee is traveling to and from work are not considered as having occurred during the course of employment and therefore are not compensable. This rule is premised on the theory that ordinarily, the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work. However, this rule has been subject to a number of jurisprudentially established exceptions. Some of these are as follows:
1) If the accident happened on the employer's premises;
2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;
3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;
4) If the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied;
5) If the employee was hurt while traveling to and from one work site to another;
6) If the employee was injured while in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee, also known as the threshold doctrine; and
7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee.
Yates v. Naylor Industrial Services, Inc., 569 So.2d 616, 619 (La.App. 2nd Cir.1990), writ denied, 572 So.2d 92 (La.1991), citing Michaleski v. Western Preferred Casualty Company, 472 So.2d 18, 20 (La.1985); Hughes v. Gearhart Industries, Inc., 552 So.2d 717, 719 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1280 (La. 1990); Justice v. Sylvester, 499 So.2d 590, 592-93 (La.App. 5th Cir.1986), writ denied, 503 So.2d 491 (La.1987); Guidry v. Chevron U.S.A., Inc., 461 So.2d 625, 626 (La.App. 1st Cir.1984); Smith v. A.I.U. Insurance Company, 457 So.2d 868, 869 (La. App. 3rd Cir.1984); Johnson v. Aetna Casualty & Surety Company, 387 So.2d 1340, 1342 (La.App. 1st Cir.), writ denied, 393 So.2d 746 (La.1980); Castille v. Sibille, 342 So.2d 279, 280-81 (La.App. 3rd Cir.1977); Gardner v. Industrial Indemnity Company, 212 So.2d 452, 454-55 (La.App. 1st Cir.1968).
The same standard of review applicable to factual findings of district courts is also applicable to factual findings of a workers' compensation judge. In workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the "manifest error-clearly wrong" standard. Alexander v. Pellerin Marble & Granite, 93-1698, pp. 5-6 (La.1/14/94); 630 So.2d 706, 710. For an appellate court to reverse a workers' compensation judge's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the workers' compensation judge or that the record establishes that the finding is clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the workers' compensation judge's finding. The reviewing court must review the record in its entirety *11 to determine whether the workers' compensation judge's finding was clearly wrong or manifestly erroneous. See Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 883.
In the instant case, the workers' compensation judge determined that Brown was in the course and scope of his employment at the time of his automobile accident. The testimony of Brown and Larry Blanchet, the owner of Coastal, was conflicting.
Brown testified that it was his understanding Coastal was providing half of the costs of his motel room in New Iberia, with his roommate, Shatoska, paying the remainder of the costs. He said Coastal approached him regarding staying in a motel rather than commuting everyday to the job sites in Lafayette from his residence in Denham Springs. According to Brown, it would cost Coastal less for him to stay in a motel, than to reimburse him for his travel expenses from Denham Springs. Brown testified Blanchet paid him for expenses he incurred in commuting by giving him cash for his gasoline receipts.
Brown's roommate and coworker, Shatoska, did not own a car. Brown provided transportation for the roommate back and forth to work when he stayed in New Iberia. Brown also testified he thought part of the reason Coastal wanted him to stay at the motel was to see that Shatoska made it to work everyday.
When he worked in Lafayette, Brown used his own truck as a job site vehicle to haul equipment which was used everyday, such as the surveying equipment and radios. He kept the surveying equipment at the motel, and charged the batteries for the radios in the motel room every night after work. Brown testified he did not believe he was ever instructed to leave the surveying equipment in the storage space at the Cajundome.
Blanchet testified he never paid Brown for gas when he commuted from his residence to Lafayette, but did pay him gas money when Brown used his truck to go from job site to job site within Lafayette. Coastal did not pay for the motel room, which was paid for solely with Shatoska's money. According to Blanchet, at no time did Coastal order Brown to pick up Shatoska for work, nor did it order Brown to stay in the motel with Shatoska. Blanchet explained the reason Shatoska stayed in the New Iberia motel was because Shatoska had experienced some personal problems and Blanchet thought it best for Shatoska to stay in a motel rather than his family home. Blanchet admitted he made Brown aware Shatoska had no transportation and was staying in the motel in New Iberia in order to give Brown the option of working out an arrangement with Shatoska.
Blanchet testified it was standing orders to his employees that equipment remain at the job site. Blanchet testified that he told Brown to leave the surveying equipment in the storage room at the Cajundome. Blanchet stated that had he known Brown was removing the equipment to the motel every night, he would have fired Brown for disobeying his rules.
We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the workers' compensation judge's findings. The testimony was conflicting, and apparently, after hearing all of the evidence, the workers' compensation judge made credibility determinations and believed Brown's version of the facts. Brown was traveling from the motel in New Iberia with his employer's equipment. He *12 had maintained and serviced the equipment at the motel and was making sure a co-worker had adequate transportation to the job site. We conclude from the facts found by the workers' compensation judge that the case sub judice is an exception to the general rule that an employee traveling to and from work is not considered to be in the course and scope of his employment. Brown's maintenance and responsibility for the equipment and providing transportation to his coworker was in the interest of his employer.

CONCLUSION
For the above and foregoing reasons, the judgment of the workers' compensation judge is affirmed, at the appellant's costs.
AFFIRMED.