HANS J. LILJEBERG, Judge.
Claimant, Joyce Whetstone, appeals a determination of the Office of Workers’ Compensation that denied her continued benefits for an alleged mental injury caused by post-traumatic stress related to an assault sustained within the course and scope of her employment. For the reasons that follow, we affirm.

Facts

In February 2001, claimant was an employee of the Jefferson Parish School Board, assigned as a special education teacher at T.H. Harris Middle School. Specifically, claimant, with the help of an assistant, taught four autistic children, including a 12-year old male. On February 22, 2001, claimant observed the 12-year old boy slap her assistant, Teresa Brown. Claimant attempted to render aid to her assistant and in the process was also physically assaulted by the boy. Other members of the staff witnessed the assault. Claimant returned to work immediately, but complained of and sought medical treatment for pain resulting from the assault; namely in her neck, shoulder, arm, *568 breast and back. Claimant continued to work until March 15, 2001, and did not return to work again until October 27, 2001, when she worked only half the day. Claimant did not return to T.H. Harris, claiming she suffered from post-traumatic stress disorder. Claimant received assault pay pursuant to La. R.S. 17:1201 from March 15, 2001, until October 15, 2005, as well as medical benefits.[1] Upon the termination of assault pay in 2005, claimant filed the instant workers’ compensation action against the school board for continued benefits.
At trial, it was learned that claimant received treatment from several doctors over the course of several years following the February 2001 assault.
Upon conclusion of the trial, the workers’ compensation court ruled in favor of the school board and dismissed claimant’s petition with prejudice. Specifically, the workers’ compensation judge did not find claimant to be credible and did not find any merit to her claim. On appeal, claimant asks this Court to reverse the credibility determinations and factual findings of the workers’ compensation judge.

Discussion of the Law

To prove entitlement to benefits for a mental injury resulting from mental stress, a claimant must prove that the mental injury was caused by “sudden, unexpected, and extraordinary stress related to employment” and must prove it by clear and convincing evidence. Renter v. Willis-Knighton Medical Center, 28,589 (La.App. 2 Cir. 8/23/96), 679 So.2d 603; Cressionnie v. Fisk Elec., 93-931 (La.App. 5 Cir. 2/14/96), 671 So.2d 3; Jeansonne v. Wick Publishing Co., 94-462 (La.App. 5 Cir. 11/29/94), 646 So.2d 1212.
La. R.S. 23:1021(8)(b) and (d) state:
(8)(b) Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
(d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Not only must the stress be extraordinary, it must be sudden and unexpected. Favorite v. Louisiana Health Care Authority, 98-721 (La.App. 5 Cir. 12/16/98), 725 So.2d 556; Bass v. Farmer & Cheatham, 94-1281 (La.App. 1 Cir. 6/30/95), 658 So.2d 324. Also, the statute requires that the extraordinary stress cause the mental injury. Joseph v. Jefferson Parish Fire Dept., 99-1300 (La.App. 5 Cir. 5/30/00), 761 So.2d 801, 802.
Moreover, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the “manifest error-clearly wrong” stan *569 dard. Dean v. Southmark Construction, 03-1051 (La.7/6/04), 879 So.2d 112, 117; Brown v. Coastal Construction Engineering, Inc., 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing Alexander v. Pellerin Marble Granite, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Alexander, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Robinson v. North American Salt Co., 02-1869 (La.App. 1 Cir. 6/27/03), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 105.

Assignments of Error Nos. 1 & 2

In her first and second assignments of error, claimant asserts that the workers’ compensation judge’s credibility determinations were manifestly erroneous. Specifically, claimant asserts that the judge erred in finding that she was not credible and in determining that Ms. Old-ham and Ms. Guidry’s testimony regarding the events surrounding the February 2001 incident to be more credible than claimant’s testimony.
As to the claimant’s credibility, the worker’s compensation judge made clear that he did not find claimant to be a credible witness. This finding is amply supported by the record. Claimant’s testimony at trial was inconsistent, evasive, and repeatedly impeached with her prior deposition testimony. One such major inconsistency included her inconsistent reporting of fibromyalgia to different doctors. At one point during trial, claimant testified that she never told doctors that she had fibromyalgia. She then stated that she may have told doctors that she had fibro-myalgia. Finally, she testified that she did tell doctors that she suffered from fibro-myalgia for 20 years. Furthermore, claimant’s testimony regarding the course of her treatment and dealings with the school board was consistently contradicted and impeached by witness after witness.
Regarding the credibility of Ms. Karen Oldham and Ms. Brenda Guidry regarding the events of February 2001, the workers’ compensation judge found their testimony credible. Ms. Oldham and Ms. Guidry are Special Education Co-Chairs at T.H. Harris. Although they did not witness the February 2001 assault, both witnesses testified as to what claimant told them regarding the assault.
Ms. Oldham testified that claimant told her that the boy pushed on her shoulders. She also testified that claimant complained that her right hand was numb in the midst of holding a coffee cup in her right hand. And, she testified that the boy was likely in high school in October 2001 when claimant testified that the child was still in her class and refused to take him to community service day based on the assault.
Ms. Guidry testified that claimant told her that the assault brought on increased pain from her pre-existing fibromyalgia. Claimant told her that the boy struck her on her shoulders and upper chest. Ms. Guidry testified that claimant’s assistant, Teresa Brown, did not leave the school immediately after the assault, as claimant testified, but that Ms. Brown stayed until Hurricane Katrina. She also testified that Ms. Eli, claimant’s substitute assistant, did not leave the school as a result of a biting incident in March 2001, as claimant testi *570 fied, but stayed until the end of the year as a permanent substitute.[2]
Again, we do not find that the judge’s credibility determinations regarding Ms. Oldham and Ms. Guidry’s testimony to be unreasonable. As previously stated, claimant’s credibility was put into question by her own inconsistent testimony and nothing in the record exists to contradict or impeach Ms. Oldham and Ms. Guidry’s version of events other than claimant’s testimony.
As stated above, where there is a conflict in testimony, reasonable evaluations of credibility will not be disturbed on review. Robinson, 865 So.2d 98 at 105. Here, we do not find that the workers’ compensation judge’s credibility determinations to be unreasonable or clearly wrong; therefore, we will not disturb such determinations on review.

Assignment of Error No. 3

In her third assignment of error, claimant asserts that the workers’ compensation judge’s findings of fact were erroneous, namely its determination that the claimant did not sustain a disabling mental injury. Again, the findings of the workers’ compensation judge will not be set aside by a reviewing court unless’ they are found to be clearly wrong in light of the record viewed in its entirety. Alexander, 630 So.2d at 710. Viewing the record in its entirety, we do not find that the judge’s finding is clearing wrong.
Pursuant to La. R.S. 23:1021, the claimant bears the burden of proving, through clear and convincing evidence, that she sustained a mental injury resulting from sudden, unexpected, and extraordinary stress relating to her employment. Instantly, claimant avers that she suffers from post-traumatic stress disorder resulting from the February 22, 2001, assault that left her disabled and unable to return to work in the Jefferson Parish School System.
As indicated above, there is no dispute between the parties that claimant was assaulted by a student while in the course and scope of her employment with the school board. Therefore, we need only determine whether claimant sustained a mental injury resulting from sudden, unexpected, and extraordinary stress resulting from the assault. The deposition and trial testimony reveal the following sequence of events regarding claimant’s diagnoses and treatment:
The day following the assault, February 23, 2001, claimant testified that she saw chiropractor, Jeffery Burns.[3] That following Monday, she testified that she went to the emergency room, where she saw Dr. Raymond, an internist, who advised that she see an orthopedist for pain.
Beginning in March 2001, on referral of Dr. Raymond and with approval of the school board, claimant saw Dr. Sketchier, an orthopedist.[4] In May 2001, Dr. Sketchier indicated in a report that it was a good idea that claimant see Dr. Bianchini, Ph.D. for psychological treatment as suggested by the school board.
Dr. Bianchini, neuropsychologist, administered several psychiatric tests to claimant, ultimately reporting that claimant did not have disabling psychological problems *571 and was capable of returning to any job for which she was qualified. However, Dr. Bianchini recommended that claimant go to an outpatient program such as the Medical Musculoskeletal Institute (“MMI”) for a multi-disciplinary approach to claimant’s continued complaints.
Moreover, in June 2001, Dr. Sketchier indicated that he probably could not help claimant any further and agreed with Dr. Bianchini’s formal recommendation that claimant be referred to MMI for treatment and would continue to see claimant only as needed.
Notwithstanding, before approving a multi-disciplinary approach such as MMI, the school board referred claimant to Dr. Aiken, another orthopedist, for a second opinion. Claimant saw Dr. Aiken in October 2001, November 2003, and June 2006. Dr. Aiken testified at trial that upon physical examination of claimant, his findings were inconsistent with her physical complaints and that her reactions to the physical exam were exaggerated. Upon completion of claimant’s second visit, Dr. Aiken concluded that she was no longer suffering any ill-effects of the assault and reported that pain management was no longer necessary. Dr. Aiken testified that there was no physical limitation keeping claimant from returning to work as a special education teacher.
Also in October 2001, upon returning to work for a half day, claimant experienced a spike in blood pressure and consulted Dr. Roberts, her OB/GYN, regarding her blood pressure and pain in her breast. Dr. Roberts issued a doctor’s note for two missed work days, although claimant never returned to work thereafter.
Furthermore, despite Dr. Aiken’s opinion that there was no physical limitation keeping claimant from work, Dr. Sketchier, Dr. Bianchini and claimant’s attorney continued to recommend to the school board that it approve the outpatient multidisciplinary treatment at MMI, which was ultimately approved in a final effort by the school board to return claimant to work. Therefore, in December 2001, claimant began treatment at MMI, where she saw a physical and occupational therapist, clinical psychologist Dr. Bushman, and Dr. Orten-berg, M.D. By March 2002, Dr. Orten-berg was of the opinion that claimant was at maximum medical improvement and was capable of returning to work with the accommodations recommended based upon the jobsite analysis performed by Jeffrey Carlisle.[5] Upon learning that she was released to return to work, claimant told Dr. Bushman that although the school board was making it easy for her to return to work, she had made up her mind not to return to the classroom and that she was going to get other doctors to say she could not return to work, while continuing to complain of pain and anxiety.
Meanwhile, Dr. Sketchier continued to treat claimant but recommended that she see a psychiatrist and indicated that he wished to discharge her as a patient. It appears that authorizations were in place for claimant to see a Dr. Walsh and a Dr. Guile, but claimant did not keep her appointments with either psychiatrist. Meanwhile, MMI continued to issue reports, including a November 2002 report indicating that claimant suffered from anxiety and depression requiring psychiatric management. However, the report indicated that claimant’s personality and ad *572 justment difficulties likely pre-existed her work-related injury.
In November 2003, claimant returned to Dr. Bianchini, who reported claimant to be malingering and that he continued to believe that claimant could return to work. Dr. Aiken additionally saw claimant in November 2003, again maintaining his opinion that she could return to work. Moreover, MMI gave a second evaluation in April 2004, finding claimant at maximum medical improvement.
Claimant additionally saw several other psychiatrists through her private insurance, including Dr. Roniger in 2003. Claimant admitted seeing Dr. Roniger only three times and did not discuss the 2001 assault, seeking treatment for depression only. Moreover, Dr. Roniger’s diagnosis was pain disorder and stated that claimant did not present as having post-traumatic stress disorder. Ultimately, claimant decided Dr. Roniger’s office was not conveniently located and began seeing Dr. Chester upon the continued advice to see a psychiatrist. Moreover, due to insurance reasons, claimant stopped seeing Dr. Chester and began seeing Dr. Henderson in 2006.
Claimant saw Dr. Henderson from July 2006 through November 2010. Dr. Henderson testified at trial on claimant’s behalf. He testified that at the initial visit, his impressions and final diagnosis were post-traumatic stress disorder, depression and chronic pain disorder, but noted that her mood and anxiety level, although significant, were not disabling. He admitted that his diagnosis was based upon Dr. Chester’s impressions. Dr. Henderson thought it unadvisable that she return to her former employment, although she could return to teaching in some fashion. Dr. Henderson testified that claimant was diagnosed with cancer only a couple of weeks after her initial visit. Dr. Henderson stated that as a result, claimant’s cancer diagnosis overshadowed the February 2001 incident and that his work with claimant was mainly focused on her physical illness and not her post-traumatic stress symptoms. Moreover, Dr. Henderson also added that other stressors in her life, namely her marriage and Hurricane Katrina, contributed to claimant’s overall level of stress.
Claimant also saw John Muggivan, a licensed clinical social worker, from 2003 through 2006. Mr. Muggivan testified that he believed that claimant suffered from post-traumatic stress disorder directly resulting from the 2001 incident and that claimant could not return to work in a classroom despite Dr. Ortenberg’s release of claimant. Mr. Muggivan further testified that his role as a counselor eventually developed into the role of claimant’s advocate in her dealings with the Jefferson Parish School Board and admitted that he advised claimant to refuse a functional capacity evaluation. On cross-examination, Mr. Muggivan admitted that he and his wife previously were employed by the Jefferson Parish School Board. He further admitted that his wife was dismissed from employment and that both filed a lawsuit against the school board.
Because of Mr. Muggivan’s new role in claimant’s dealings with the school board, claimant discontinued her counseling with Mr. Muggivan and began seeing psychologist Dr. Fiaola, who was her treating psychologist at the time of trial.
In September 2006, claimant also saw psychiatrist Dr. Culver at the request of the school board. Tendered as an expert in psychiatry and neurology, Dr. Culver testified that he did not believe the assault was the kind of incident that could trigger post-traumatic stress disorder and completely ruled out that diagnosis after claimant’s second visit. He testified that he *573 believed claimant suffered from a mild adjustment disorder with some anxiety and depression and believed her to be malingering.
As stated above, claimant must prove her alleged mental injury, post-traumatic stress disorder, by clear and convincing evidence. We find that the workers’ compensation did not manifestly err in finding that she did not. We find there was ample testimony, both lay and medical, directly contradicting claimant’s assertions and recitations of fact upon which the court could rely in denying claimant’s claim. Claimant saw a minimum of 15 health care professionals from 2001 through 2010. Only in 2005 was a post-traumatic stress diagnosis given by Dr. Chester and John Muggivan, a social worker. As early as March 2002, four doctors, including her own treating physician, were in agreement that claimant reached maximum medical improvement and she could return to work. Despite that finding, claimant continued to receive assault pay through October 2005, as a continued effort by the Jefferson Parish School Board to return claimant to work. Finally, after two and a half more years passed without claimant making any effort to return to work, the school board terminated her benefits. Considering the law and evidence, we do not find that the workers’ compensation judge’s factual finding, that claimant did not sustain a disabling mental injury resulting from work-related stress, was manifestly erroneous.

Assignment of Error No. 4

Last, claimant maintains that the workers’ compensation judge erroneously prohibited John Muggivan, claimant’s private licensed clinical social worker, from providing a diagnosis of mental injury at trial and from giving his opinion of psychological testing administered to claimant by psychiatrists and/or psychologists. As outlined above, La. R.S. 23:1021 provides that “no mental injury or illness resulting from work-related stress shall be compen-sable unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist.” Mr. Muggivan testified that he is a licensed clinical social worker, not a psychiatrist or psychologist. Therefore, Mr. Muggivan’s diagnosis or opinions regarding that diagnosis are irrelevant within the context of claimant’s workers’ compensation claim. Moreover, Dr. Henderson, claimant’s treating psychiatrist, testified at trial. Claimant could have easily elicited the same information from Dr. Henderson as she sought to elicit from Mr. Muggivan. Accordingly, we do not find that the workers’ compensation judge’s ruling, limiting the scope of Mr. Muggivan’s testimony, to be manifestly erroneous.

Decree

Considering the foregoing, we affirm the judgment of the Office of Workers’ Compensation in favor of the Jefferson Parish School Board.

AFFIRMED

. Jane Patton, of the Jefferson Parish School Board, explained at trial that assault pay encompassed claimant's full salary and was paid in lieu of workers’ compensation benefits. Ms. Patton explained that claimant was paid as if she was actually working, accruing sick and annual leave. It was stipulated that claimant received $92,732 in assault pay during the period of March 15, 2001, and October 15, 2005.

. On March 15, 2001, claimant and Ms. Eli took two students to community service day at a local Sav-A-Center, where one of the students bit claimant’s finger.

. Claimant continued her chiropractic treatment with Jeffeiy Burns through October 2001 with the approval of the school board, having gaps in sessions when claimant went on vacation.

.Dr. Sketchier continued to treat claimant’s physical complaints through July 2006.

. Such accommodations included assigning claimant to higher functioning level students who are verbal and not prone to behavioral problems and the removal of any student prone to behavioral problems from the classroom.