FREDERICKA HOMBERG WICKER, Judge.
|2Defendant, Touro Infirmary (“Touro”), appeals the trial court’s judgment finding it liable to plaintiff, Ms. Susan Sicard, under Louisiana’s Worker’s Compensation law. Touro argues the trial court manifestly erred in finding that Ms. Sicard suffered a work-related injury on April 23, 2012. Ms. Sicard answered the appeal, seeking attorney’s fees for her attorney’s work on this appeal. After examining the evidence, we disagree with Touro. We find the trial court’s decision to be reasonable and therefore affirm its judgment on the merits. However, as we find that Tou-ro reasonably controverted Ms. Sicard’s claim on appeal, we deny Ms. Sicard’s request for additional attorney’s fees.

PROCEDURAL HISTORY

On May 11, 2012, Ms. Sicard filed two disputed claims for Worker’s Compensation benefits against Touro. In one, she alleged she suffered a work-related injury on August 29, 2011. In the other, she alleged she suffered another work-related injury on April 23, 2012. In response, Touro admitted it employed Ms. Sicard; however, it argued that it was not liable to Ms. Sicard because she had not had a compensable “accident” under the terms and provisions of La. R.S. 23:1021(1).
¡■¡The trial court combined these two claims and then, on January 17, 2013, held a trial on the merits.[1] The trial court issued its judgment on March 14, 2013.
In favor of Touro, the trial court found that Ms. Sicard failed to prove that she suffered a work-related injury on August 29, 2011. The trial court also found that Touro had reasonably controverted Ms. Si-card entitlement to benefits and that therefore, no penalties or additional attorney’s fees would be assessed.
In favor of Ms. Sicard, the trial court found that she was injured by an accident, during the course and scope of her employment, on April 23, 2012. The trial court also found that Ms. Sicard had preexisting medical problems before April 23, 2012 which were aggravated by the work-related accident on April 23, 2012.
Having found Ms. Sicard had suffered a work-related accident on April 23, 2012, the trial court issued awards in favor of Ms. Sicard and her attorney. For the time period from April 24, 2012 through September 3, 2012, the trial court ordered Touro to pay Ms. Sicard the maximum compensation rate of $592.00 weekly in temporary total disability benefits.[2] For *991 the time period from September 12, 2012 to the present and continuing, the trial court ordered Touro to pay Ms. Sicard supplemental earnings benefits. The trial court ordered the amount of these benefits to be calculated using a minimum wage earning capacity. Further, the trial court ordered Touro to pay Ms. Sicard all medical expenses, medication expenses, indemnity, and travel expenses for the aggravation of the injuries caused by the accident on April 23, 2012. The trial court also ordered Touro to reimburse Ms. Sicard for medical co-payments that she made for the injuries of April 23, 2012. The trial court ordered that Touro be given a credit for all benefits paid by them in ^accordance with law. Finally, it ordered Touro to pay statutory attorney’s fees to Ms. Sicard’s attorney and assessed against Touro all costs and interest.[3]
Touro petitioned for a suspensive appeal on April 12, 2013. The trial court granted this petition on April 15, 2013. On July 16, 2013, Ms. Sicard answered this appeal and requested that this Court award her a reasonable attorney’s fee in connection with her attorney’s work on this appeal. Ms. Sicard does not appeal the trial court’s finding that she did not suffer a work-related accident on August 29, 2011.

FACTS

At trial, the court heard testimony from: the plaintiff, Ms. Sicard; her director at Touro, Mr. Robert Burger; and her supervisor at Touro, Ms. Bthel Bromlay. The trial court also admitted portions of Ms. Sicard’s Touro personnel file, as well as medical records describing Ms. Sicard’s condition and treatment at various points. The parties stipulated that Ms. Sicard’s average weekly wage on April 23, 2012 was $1,331.50.
Susan Sicard testified that on August 29, 2011 and on April 23, 2012, she was a full-time Touro Infirmary employee working as an ultrasound technician. Describing her job, Ms. Sicard testified that it took her between 45 minutes and two hours to perform an ultrasound study. Ms. Sicard testified that she spent 80% of her time standing performing tasks such as adjusting, pushing, and pulling the ultrasound machine. She testified that she spent the other 20% of her time sitting, crouching down, bending at the waist, and twisting. Ms. Sicard testified that when she used a transducer, a piece of equipment that directs ultrasound waves into the body, she was forced to sit on the patient’s side and lean over the patient. Occasionally, she assisted patients onto gurneys; which involved heavy lifting. | ¿Another part of her job was to pump the gurney up and down; and she did this by pumping the gurney with her foot. Ms. Sicard testified that she was required to do this pumping motion between 20 and 30 times a day.
Condition before the April 12, 2012 Accident
Ms. Sicard testified that she had two surgeries related to her back before her accident on April 23, 2012. The first surgery was due to an injury she sustained while working with a previous employer sometime after Hurricane Katrina in 2006. This 2006 injury occurred while she was pushing an ultrasound machine. She experienced a severe right sciatica pain which continued into her right leg. She was diagnosed with a severe compression of her sciatica nerve. To treat that injury, Ms. Sicard testified that she underwent microdiscectomy surgery on her right side and lower back in the L5-S1 area of her spine.[4] She testified that she felt she *992 made a complete recovery after this surgery.
The second surgery occurred after Ms. Sicard’s incident on August 29, 2011. Ms. Sicard testified that on August 29, 2011, she was attending a conference in Wisconsin to learn how to use new ultrasound equipment Touro had purchased. Touro stipulated that Ms. Sicard’s attendance at this conference was in connection with her job duties at Touro. August 29, 2011 was a Monday; it was the first day of the conference. Ms. Sicard testified that when stepping into the shower that morning, her left leg “gave a little bit” and her “right hip hit the shower tub edge.” She did not fall into the tub. This incident caused her a bruise and tenderness on her right hip and buttock area.
Ms. Sicard testified that she did not report this incident to her employer either at the conference or upon her return to work. She continued to attend all three days of the conference as she had planned. She then returned to New Orleans Rand worked the Thursday and Friday of that week at Touro. Ms. Sicard testified that she did not begin to suffer severe pain until Thursday, September 8, 2011, the week after she attended the conference.
This pain was on her right side in her hip and buttocks. Ms. Sicard testified that this pain was similar to the symptoms she had from her previous injury in 2006. Ms. Sicard testified that her pain became so intense that she sought medical treatment from her primary care physician and then from Dr. Miles.
Dr. Miles gave Ms. Sicard an MRI which revealed that her L5-S1 right disc was severely compressed and herniated. Dr. Miles advised her not to work until she saw her neurosurgeon, Dr. Richard Co-rales. Ms. Sicard saw Dr. Corales the following Monday, September 12, 2011, and he admitted her to East Jefferson General Hospital for pain management. On September 14, 2011, Dr. Corales performed a right microdiscectomy surgery on Ms. Sicard. Medical records show that this surgery was at least somewhat successful in relieving her pain. Following her surgery, Sicard received post-operative therapy at Crane Rehab and was placed on leave pursuant to the Family Medical Leave Act. Ms. Sicard testified that she returned to work around October 29, 2011. Ms. Sicard worked a shortened schedule for approximately two weeks, and then returned to her normal eight-hour shift.
Ms. Sicard testified that in the beginning of 2012, she started to develop the same pain in her right side. Ms. Sicard went back to Dr. Corales in mid-February of 2012. Dr. Corales gave Ms. Sicard lido-caine patches and a steroid pack to help treat her pain. Ms. Sicard saw Dr. Co-rales for this pain again in March of 2012. Dr. Corales referred her to Dr. Crapanza-no for a steroid injection. Ms. Sicard described her pain as “a repetitive type thing where I was doing the same thing over and over again.”
17At some point towards the end of March, Ms. Sicard testified she spoke to her director, Robert Burger, about her physical problems. Ms. Sicard informed Mr. Burger that her repetitive work was causing her pain on both of her sides, but the pain was more severe on the left side starting in February. She asked him if she could reduce her work schedule to three days a week. Mr. Burger denied this accommodation. Ms. Sicard testified that the pains which led her to ask Mr. Burger for a reduction in work hours were not the result of a specific accident; rather, they occurred while Ms. Sicard did her work.
*993 The April 23, 2012 Accident
Ms. Sicard testified that while performing an ultrasound on April 23, 2012, she was standing up and leaning over the patient reaching over the patient on her right side when she felt “a severe, sharp pain down” her right leg. Ms. Sicard testified this pain was like a snap and that then her left hip and buttocks started throbbing and burning in pain.
Ms. Sicard testified that she had scanned two patients that day before her injury. In regards to this accident, Ms. Sicard testified that it occurred suddenly when she was pumping the stretcher up with her left leg. Describing her pain, Ms. Sicard testified, “[i]t was a sudden, severe, sharp pain down my right leg like sciatica pain and in the right hip. And it was severe and burning on the left buttocks and left hip. Just like a burning like something is inflamed. It ... was just so intense.” Ms. Sicard testified that while her previous pain was an “achy aggravation,” this pain was much more intense. Ms. Sicard continued her shift, but the pain did not go away after resting at home. Ms. Sicard testified that her pain was so severe that she could not return to work.
On April 25, 2012, Ms. Sicard reported her April 23, 2012 accident to Patsy Fo-berg who worked in Touro’s Human Resources department via email. In that 1 semail, Ms. Sicard informed Ms. Foberg that on April 23, 2012, she “experienced an episode of severe right leg pain causing my sciatic nerve to flare up” and requested an incident report. Ms. Sicard received and completed her injury report the same day. On April 26, 2012, in another email to Ms. Foberg, Ms. Sicard explained the history of her pain starting from the August 29, 2011 incident.
Ms. Sicard first saw Dr. Crapanzano, a pain management doctor, on May 1, 2012.[5] Dr. Crapanzano gave her a left sacral iliac joint injection. Ms. Sicard’s first visit after her April 23, 2012 accident was to Dr. Crapanzano because she had a previously scheduled appointment with him.
Ms. Sicard also gave a statement on May 1, 2012 to Ms. Tammy Bartlett who was working on behalf of Touro. In that statement, Ms. Sicard described her accident as occurring on April 23, 2012 when she was scanning a patient. She made no specific mention about pumping gurneys. Also in that statement, Ms. Sicard stated that no one witnessed her injury and that she did not report her injury to the director, Robert Burger, but rather went home and later reported it to Ms. Foberg.
Ms. Sicard returned to work at Touro for the first time after her accident on June 18, 2012. Ms. Sicard testified that on her second day back at the job, when pumping up a stretcher with her left leg, the pain came back intensely. Ms. Sicard then decided that she could not continue her work because this pumping task would be required every time she was to perform an ultrasound scan. Ms. Sicard called into work to say that she could not continue.
After this failed attempt to return to work, Ms. Sicard continued her treatment with physical therapy and epidural injections with Dr. Crapanzano. Ms. Sicard also sought the treatment of Dr. Moss. After months of continued | ¡treatment, Dr. Moss issued her restrictions which prevented her from performing her job.[6] Dr. Moss issued Ms. Sicard restrictions against prolonged standing, sitting, squatting, bending or twisting. Dr. Moss also restricted Ms. Sicard from pushing or pulling heavy equipment such as an ultrasound *994 machine, lifting anything heavier that ten to twenty pounds, pumping up of a stretcher with lower extremities, and working more than four hours a day.[7]
Ms. Sicard testified that she received a letter from Touro informing her that it could not accommodate her restrictions and that if she could not return to work that it would consider her to have voluntarily resigned. Ms. Sicard testified that this ended her employment with Touro and that she has not worked since June 29, 2012.
Regarding her current condition, Ms. Sicard testified that she feels continuing pain in her left hip and buttock, in her right hip, in her lower back, and sciatica pain down the left lateral aspect of her leg into her calf area. Ms. Sicard testified that she has numbness in her right calf and right foot. She said her pain continues at a level of 5 out of 10 and stated that the pain increases to a level of 8 when she conducts daily activities. She testified that her last epidural injection treatment by Dr. Crapanzano was on October 4, 2012. In December of 2012, Ms. Sicard saw Dr. Robert Miles again for her continued pain; he suggested another round of physical therapy. Ms. Sicard testified that she is still undergoing physical therapy.
With regard to her future employment opportunities, Ms. Sicard testified that she does not feel as if she can return to work at Touro because her job requires repetitive tasks of her that give her severe pain. She testified that her highest level |inof educational achievement was an Associate of Science degree in radiologic technology. Ms. Sicard testified that this degree prepared her to be an x-ray technologist and that she learned ultrasound technology on the job. She testified that she has worked as an ultrasound technician for over twenty years.
With regard to the expenses she incurred, Ms. Sicard testified that while her health insurance has paid for most of her medical bills, she still incurred the cost of her deductibles.
Supervisors’ Testimony
Mr. Robert Burger, the director of the Touro Imaging Center, testified that he was never made aware of any injury of Ms. Sicard while she attended the training seminar in August of 2011. Mr. Burger confirmed that Ms. Sicard came to him in March of 2012 asking for a reduction in the number of her working hours because of her ongoing back problems. He also confirmed that Ms. Sicard did not report to him that she had an accident on April 23, 2012. Mr. Burger testified that he first became aware of her April 28, 2012 accident later in the year, after her leave of absence. Mr. Burger testified that after Ms. Sicard went “out from work” around April 24, 2012, he communicated with her via text message and Ms. Sicard did not indicate in those messages that she had an accident or the cause of her being out from work.
Mr. Burger confirmed that Ms. Sicard returned to work for two days in June of 2012. Mr. Burger testified that during those two days, Ms. Sicard performed her normal work duties and did not request any accommodation. Mr. Burger also testified that he was not told by Ms. Sicard why she was leaving after those two days.
Bthel Bromlay, a sonographer at the Touro Imaging Center and Ms. Sicard’s supervisor there, testified that she runs the day-to-day operations in the ultra *995 sound lnarea. She testified that she worked with Ms. Sieard there in 2011 and 2012. Ms. Bromlay testified that Ms. Si-card did not report the first alleged accident of August 29, 2011 to her. Ms. Bromlay also testified that Ms. Sieard never asked her for any accommodations in her job duties, nor did Ms. Sieard complain to her about any pain or discomfort while performing her duties. With regard to April 23, 2012 specifically, Ms. Bromlay testified that she did not believe Ms. Si-card had an accident on that date.

DISCUSSION

Touro’s Assignment of Error
In its sole assignment of error, Touro argues the trial court erred in finding Ms. Sieard suffered a compensable “accident” under Louisiana’s Worker’s Compensation law. Specifically, Touro points this Court to Ms. Sicard’s pre-existing back condition and alleges that Ms. Sieard is not a credible witness because of inconsistencies in Ms. Sicard’s reporting as to whether this incident occurred while she was pumping up a gurney with her foot or when she was scanning a patient. Touro argues that Ms. Sieard did not suffer an “accident” because she did not experience a precipitous and sudden event.
The trial court considered this line of argument by Touro at trial and rejected it. On appeal, this Court reviews findings of fact such as this under the “manifest error-clearly wrong” standard of review. Dean v. Southmark Constr., 03-1051 (La.7/6/04), 879 So.2d 112, 117, citing, Brown v. Coastal Constr. Eng’g, Inc., 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10. Accordingly, the findings of the trial court will not be set aside by this Court unless they are found to be clearly wrong in light of the record viewed in its entirety. Id. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon | ^review, even though this Court may feel that its own evaluations and inferences are as reasonable. Id., citing, Robinson v. North Am. Salt Co., 02-1869 (La.App. 1 Cir. 6/27/03), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Louisiana Revised Statute 23:1021(1) defines an “accident” for purposes of Worker’s Compensation law as:
an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an “accident” within the meaning of La. R.S. 23:1021(1). Rostrop v. Gray Ins. Co., 12-554 (La.App. 5 Cir. 4/10/13), 115 So.3d 535, 539-40.
The employee in a workers’ compensation action has the burden of proving a work-related accident by a preponderance of the evidence. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.7/2/12), 93 So.3d 1253, 1257. An employee may prove that an unwitnessed accident occurred in the course and scope of his employment by his testimony alone if the employee can prove: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the *996 alleged incident. Id. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Ardoin v. Firestone Polymers, L.L.C., 10-245 (La.1/19/11), 56 So.3d 215, 219, citing Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992).
Here, Ms. Sicard alleged she suffered an accident on April 23, 2012 that was unwit-nessed by any of her co-workers or supervisors. Ms. Sicard consistently described her accident on April 23, 2012 as an episode of severe pain that was substantially different than the pain which she was previously experiencing. Ms. Sicard consistently reported that this pain occurred while she was working when she was performing an ultrasound scan of a patient. Furthermore, Touro offered no medical evidence to refute Ms. Sicard’s allegations of this accident and injury. Ms. Sicard’s testimony is also supported by the circumstantial events surrounding Ms. Sicard’s April 23, 2012 accident. Ms. Sicard did not return to work the next day. She reported her accident to her employer soon after the accident occurred. And subsequent medical records note April 23, 2012 as a distinct date of an accident which worsened Ms. Sicard’s condition.
We find this case similar to McCall v. Wal-Mart Stores, Inc., 02-1343 (La.App. 3 Cir. 3/5/03), 846 So.2d 832. In McCall, experts disagreed over whether the claimant/cashier was injured by a specific movement or on account of her advanced age and her job’s requirements of constant standing, lifting, and bending. Furthermore, while the claimant testified that she first experienced the pain from her injury while working on a specific day and time, the plaintiff could not identify the exact movement she was making when she suffered the injury she alleged. Despite this, the Third Circuit found that the claimant reasonably proved that she suffered a work-related injury. The court found that it was immaterial that the plaintiff could not identify the exact movement she was making at the time of the sudden onset of pain.
114Considering the law, jurisprudence, and the evidence in the record, we find the trial court did not manifestly err in determining Ms. Sicard suffered an accident and injury on April 23, 2012. Accordingly, Touro’s assignment of error is without merit.
Attorney’s Fees on Appeal
Ms. Sicard answered this appeal requesting additional attorney’s fees for her attorney’s work on this appeal.
We recognize that “[a]n increase in attorney’s fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiffs attorney, provided that the plaintiff requests such an increase.” Richert v. Schindler Elevator Corp., 11-1099 (La.App. 5 Cir. 6/28/12), 97 So.3d 487, 494, writ denied, 12-1760 (La.11/2/12), 99 So.3d 677. The record here shows that Ms. Sicard’s attorney requested such attorney’s fees and filed a brief in support of the trial court’s ruling. However, in this case, we find that Touro reasonably controverted Ms. Sicard’s claim through this appeal. Because this claim has been reasonably controverted, there is no statutory basis for the award of attorney’s fees on appeal. Therefore, we decline to grant Ms. Sicard attorney’s fees for this appeal.

CONCLUSION

For the foregoing reasons, we affirm the trial court’s March 14, 2013 judgment. *997 We also deny Ms. Sicard’s request for additional attorney’s fees.

AFFIRMED.

. This case was consolidated from cases numbered 12-03217 and 12-03219.

. The trial court found that, on April 23, 2012, Ms. Sicard's average weekly wage was $1,331.50.

. On May 8, 2013, the trial court issued its reasons for judgment.

. Dr. Corales’s medical records describe Ms. Sicard’s 2006 surgery as a "right L5-S1 lami-nectomy discectomy.”

. In May of 2012, Ms. Sicard also began seeing Dr. Moss at Southern Orthopedic.

. Dr. Moss issued these restrictions in a letter dated September 12, 2012.

. On cross-examination, Ms. Sicard admitted that when filling out forms for treatment by Dr. Moss that she indicated that her condition was not work related and not as a result of an accident.