ROBERT M. MURPHY, Judge.
| gIn this workers’ compensation case, de-' fendant, Avis Budget Group, Inc., appeals the judgment of the Office of Workers’ Compensation (“OWC”) awarding claimant, Sharon Mangiaracina, medical, medication and travel expenses, as well as weekly temporary total disability benefits. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
It is not disputed that the claimant, Sharon Mangiaracina, had a work-related accident[1] on January 8, 2013, while in the employment of defendant, Avis Budget Group, Inc. (“Avis”), as a rental and sales agent. It is also not contested that claimant had a pre-existing injury to her left shoulder for which she had received medical treatment prior to the accident of January 8th. Claimant testified, however, that none of her pre-existing shoulder issues ever affected her ability to work at Avis, and prior to her injury she never had any limitations placed on her because of her shoulder.
|sAt the direction of her supervisor, claimant went to “Concentra” on January 9, 2013, for treatment. After treating claimant on that date, Dr. Timothy Lavin noted in his report the claimant had related increased pain in her shoulder following the accident. On January 18, Dr. Douglas Lurie, from Concentra, recommended physical therapy, which claimant set up through Dr. Charles Murphy’s office.
' Claimant had discussions with Carmel Kerley, an adjuster for Avis’ insurer, CNA, and Kerley told claimant that her injuries were considered to be a preexisting condition. Claimant disagreed with Kerley’s assessment of her injury. Two days after her conversation with Kerley, claimant saw Dr. Murphy, who had previously treated her shoulder for dislocation. In the January 24 visit, Dr. Murphy found that Mangiaracina’s shoulder condition was worse than before the accident, including “significant guarding with range of motion.” He noted in a report following evaluation that claimant complained of “significant worsening” of the pain in her left shoulder following the accident. Dr. Murphy recommended a surgical consultation for claimant’s shoulder, and wrote a prescription for physical therapy. Dr. Murphy restricted claimant to lift no more than five pounds, and to place no stress on the left shoulder or right thumb. Claimant thereafter solicited a surgical opinion from Dr. William Junius, who suggested a surgery which ultimately took place on June 13, 2013. Three months prior to trial, claimant was told she could return to work; however she had been terminated from her employment with Avis on June 17, 2013. Claimant was employed at the time of trial, but stated that she had re *1116 ceived unemployment benefits for a period of time.
Dr. Junius’ medical invoices totaled $9,144.20. The bill to Southshore Physical Therapy was for $6,549.00. Avis did not pay these bills; they were covered under claimant’s benefits provided through Aet-na. Avis did not pay a |4medical bill to East Jefferson Hospital totaling $43,381.35 or a bill for surgery totaling $34,818.25. Her bill for prescriptions totaled $2,200.99.
Kerley stated in a deposition that she first learned of claimant’s surgery after being contacted by claimant’s counsel on August 20, 2013. Kerley replied to claimant’s counsel that, based upon her review of medical records, “the need for surgery was not related to the work comp claim.”
Claimant filed a disputed claim for compensation on October 11, 2013. Following trial on July 16, 2014, the workers’ compensation judge issued a judgment, finding that claimant sustained a compensable work-related injury on January 8, 2013. The judge further found that claimant had pre-existing left shoulder, back and thumb injuries which were aggravated and exacerbated by the accident, and that the related shoulder surgery on June 13, 2013, was reasonable. Claimant was awarded weekly temporary total disability benefits from June 13, 2013, through September 21, 2013, as well as all medical, medication and transportation expenses related to the treatment of injuries relative to the accident.
DISCUSSION
On appeal, Avis raises three assignments of error:
1.The [OWC] erred in finding the Claimant-Appellee established the surgery of June 13, 2013, and subsequent treatment were reasonable and necessary by clear and convincing evidence;
2. The [OWC] erred in finding that the Claimant-Appellee established a “causal connexity” between the accident of January 8, 2013, and her disability;
3. Alternatively, the [OWC] erred in failing to apply the non-emergency medical care statutory cap pursuant to La. R.S. 23:1142(B).
In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the “manifest error-clearly wrong” standard. Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117, citing, Brown v. Coastal Constr. & Eng’g, Inc., 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Id. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id., citing, Robinson v. North Am. Salt Co., 02-1869 (La.App. 1 Cir. 6/7/03), 865 So.2d 98, 105.
In Hotara v. Murphy, Rogers, Sloss & Gambel, 11-1143 (La.App. 5 Cir. 05/31/12), 97 So.3d 407, this Court discussed whether an employee’s preexisting condition precludes recovery in these types of cases.
Jurisprudence holds that because an employer takes his employee as he finds him, “a preexisting condition does not prevent recovery through workers’ compensation.” Tate v. Cabot Corp., 01-1652 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, citing, Curtis v. Wet Solutions, Inc., 98-789 (La.App. 3 Cir. 12/9/98), 722 So.2d 421. Aggravation of a preexisting injury may constitute a disabling injury when, for example, the plaintiff begins to *1117 suffer new symptoms after the second workplace accident. Id. The Third Circuit explained in Tate, supra:
[a] pre-existing disease or infirmity does not disqualify the claimant from receiving benefits if the workplace accident aggravated, accelerated, or combined with the disease to produce the disability for which compensation is claimed. Thus, the element of causation is satisfied if the employee’s work-related accident was a factor in bringing about the employee’s disabled status. Whether a causal relationship exists between the disability and the employment is a question of fact. The hearing officer’s determination in this regard cannot be reversed unless it is manifestly erroneous based on examination of the record as a whole.
The employee’s workplace accident is presumed to have caused or aggravated her disability when she proves that: (1) before the accident, she had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a casual [sic] relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident.
In Tate v. Cabot Corp., 01-1652 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, writ denied, (La.11/22/02), 829 So.2d 1044, the case this Court referenced in Hotard, supra, the third circuit upheld an award to a claimant who actively suffered from a preexisting injury for 15 years before having a subsequent workplace accident that left him injured. The third circuit reasoned:
Clearly, Mr. Tate was not completely healed from his preexisting injuries. His pre-accident state of health, though less than perfect, will not preclude him from claiming workers’ compensation in this case. The removal of the mop bucket from the sink was an unexpected, identifiable, and discernible incident. While Mr. Tate may have manifested symptoms prior to the accident, they were neither immediate nor disabling; he worked for many years with preexisting medical problems. After lifting the bucket, Mr. Tate began to experience elements of pain, and Dr. Foster noted that while there was no new symptomol-ogy, there was an objective increase in the severity and degree of pain. Moreover, a significant number of references in the medical notations clearly indicate that the accident aggravated, accelerated, or combined with his preexisting infirmities. This creates a reasonable possibility of a causal connection between the accident and his present condition.
Tate v. Cabot Corp. 824 So.2d at 462-463. Notably, the third circuit concluded that the issue of whether claimant’s condition prior to the accident was progressive “is of no moment if new elements of injury arose from a subsequent identifiable and discernible event.” Id. at 462.
In this case, claimant was the only witness to testify at trial, and her testimony was uncontroverted. As noted above, claimant’s testimony was that prior to the accident, her preexisting shoulder condition did not require her to have any work restrictions. After the accident, Dr. Murphy restricted claimant to lift no more than five pounds, and to place no stress on the left shoulder or right thumb. The record shows that claimant reported to her *1118 treatment providers that she had not sustained a recent dislocation of her left shoulder prior to the accident, but following the accident she had dislocated her shoulder three times. The,record further demonstrates, through the reports of claimant’s treating physicians, that the accident of January 8, 2013, exacerbated a pre-existing injury to claimant’s shoulder. Similar to the claimant in Tate, supra, Dr. Lurie’s report of January 18, |72013, opined that his impression was that claimant suffered “chronic instability” of the left shoulder that had been “aggravated by [the] recent accident.” Similarly, Dr. Murphy’s report, dated January 24, 2013, concludes that the January 8 accident caused “new trauma” and “symptomatically aggravated the left shoulder.”
Avis contends that the OWC’s judgment and written reasons in this case focus on a “symptomatic aggravation,” or an increase in pain caused by the January 8, 2013, accident, but concludes that “there is no evidence to suggest the Claimant’s left shoulder condition was worsened by the accident.” Avis further asserts that claimant began seeking orthopedic treatment for her left shoulder before the accident and was in the process of scheduling a surgery that had been recommended for her shoulder-prior to the accident.
The fact-finder’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. Hamilton v. Compass Grp. USA/Morrison, 07-501 (La.App. 5 Cir. 11/27/07), 973 So.2d 803, 806-07. If the lower court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
Based upon our review of the record, we find that the OWC’s findings of fact regarding the causation of claimant’s injuries following the undisputed accident of January 8, 2013, were not manifestly erroneous. Accordingly, we also find no error in the OWC’s award of medical benefits for treatment of those same [ sinjuries. Thus, we find appellant’s first two assignments of error to be without merit.
Avis next argues that OWC judge erred in failing to apply the nonemergency medical care statutory cap pursuant to La. R.S. 23:1142(B), which provides, in relevant part:
(a) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation.
Avis asserts that instead the OWC judge applied La. R.S. 23:1142(E), which states that, “In the event that the payor has denied that the employee’s injury is com-pensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.” Avis concludes in its brief, “Regardless of any erroneous assumptions the Claimant may have made about the handling of her claim, treatment was being approved and she still had the requirement to submit any additional requests of whatever nature to the insurer via a LWC-WC-1010.”
. Conversely, claimant contends that her own testimony and that of Carmel Kerley *1119 established that Avis had classified the injury to her shoulder as preexisting, and that this information was relayed to claimant in a January 22, 2013 phone call.[2] The claimant asserts that after Avis put claimant on notice that it was not liable for the claim because it had determined that the injury was preexisting, she had no recourse but to pursue her own course of medical treatment.
This Court considered a similar issue in Martin v. Elmwood Medical Center, 95-415 (La.App. 5 Cir. 11/15/95), 665 So.2d 470. In that case, the claimant 19filed an action alleging that she sustained an injury to her back when she lifted a bag of wet linen in the course and scope of her employment with Elmwood. Although it did pay some of claimant’s medical bills, Elm-wood refused to pay any worker’s compensation disability benefits. Elmwood took the position that the claimant was not entitled to worker’s compensation benefits because she failed to show a work-related injury. On appeal, Elmwood argued that the hearing officer erred in failing to limit the award of medical expenses to $750.00 as required by La. R.S. 23:1142(B). Elm-wood asserted that, since the claimant did not obtain the consent of the employer before seeking the non-emergency treatment at a chiropractic clinic, a $750.00 cap on those charges should have been imposed. In finding the claim to be without merit, this Court reasoned that because Elmwood’s position in the trial court and on appeal was that the claimant suffered no work-related compensable injury, the $750.00 cap did not apply as per La. R.S. 23:1142(E). Id.
Similarly, in this case, the record demonstrates that Avis disputed that claimant’s injury was caused by the workplace accident and instead asserted that the injury was preexisting. This is evidenced through the testimony of Carmel Kerley and in the pleadings filed by Avis both in the court below and on appeal. Based on the foregoing, we cannot say that the trial court erred in finding the $750.00 cap inapplicable in this case. Accord, Carradine v. Regis Corp., 10-529 (La.App. 3 Cir. 11/03/10), 52 So.3d 181.
Based on the foregoing, we find this assignment of error to be without merit. CONCLUSION
The findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Dean, supra. Based on the entirety of the record, we cannot say that the trial court |10was manifestly erroneous in finding that claimant’s shoulder injury was aggravated by the workplace fall, resulting in a compen-sable injury. Accordingly, the judgment is affirmed.

AFFIRMED.

. Claimant contended that she injured her shoulder, back and thumb while she was seated in an office chair that "fell frontwards.”

. In a letter dated August 21, 2013, Kerley reaffirmed CNA's position that claimant’s injuries were a pre-existing condition and therefore her claim would be denied.